# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE

Assigned on Briefs May 15, 2002

## STATE OF TENNESSEE v. PERRY SINGO

### Direct Appeal from the Circuit Court for Dickson County
No. CR-4574    Allen W. Wallace, Judge

---

### No. M2001-00919-CCA-R3-CD - Filed August 9, 2002

---

The defendant appeals his convictions for four counts of rape of a child and four counts of aggravated sexual battery, for which he received an effective sentence of 50 years, arguing: (1) his confession was involuntary; (2) the evidence was not sufficient to support his convictions; (3) the trial court erred in admitting sexually explicit photographs of the defendant depicting prior bad acts and improperly instructed the jury regarding consideration of the photographs; (4) the trial court improperly admitted defendant's letters and other writings; (5) the trial court improperly allowed a non-qualified witness to testify regarding certain matters; (6) the trial court failed to require the state to elect offenses; (7) the trial court erred in failing to charge the jury on simple assault as a lesser-included offense of aggravated sexual battery; and (8) the trial court erred in its oral response to a question posed by the deliberating jury. The state concedes the evidence is insufficient to support three of the child rape convictions, and we agree. We find no other reversible error. Therefore, we reverse and dismiss these three convictions and affirm all other convictions. We remand to the trial court for a redetermination of concurrent/consecutive sentencing.

### Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed in Part; Reversed in Part; Remanded for Resentencing

JOE G. RILEY, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and JAMES CURWOOD WITT, JR., JJ., joined.

William B. (Jake) Lockert, III, District Public Defender, for the appellant, Perry Singo.

Paul G. Summers, Attorney General and Reporter; Angele M. Gregory, Assistant Attorney General; Dan M. Alsobrooks, District Attorney General; and Suzanne M. Lockert, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The defendant, his girlfriend Tina Bosarge, their infant daughter "J.S.,"[1] and Bosarge's daughter, the-six-year-old victim, moved to Dickson, Tennessee, from Michigan in October 1998. In December 1998, Detective Michael Fleanor of the Dickson Police Department investigated a complaint about possible sexual abuse. On December 11, 1998, Detective Fleanor and Stacey Loveless of the Department of Children's Services went to the defendant's home, and the defendant agreed to go with them to the Department of Children's Services office for an interview. Detective Fleanor stated the defendant was advised of his rights even though he was not in custody. The defendant signed an admonition and waiver. The interview was taped.

Initially, the defendant denied he had sexually abused the victim. During the interview, the defendant asked Stacey Loveless to leave the room and asked Detective Fleanor to turn off the tape. Detective Fleanor testified that after Loveless left and the tape was turned off, the defendant told him he had sexual contact with the victim during the first of November, in the middle of November, at the end of November, and at the first of December 1998. Fleanor stated the defendant "said that he got oral sex from [the victim], that he would rub his penis on her and he would ejaculate on her." However, Fleanor said the defendant indicated oral sex occurred only once, in the middle of November. Fleanor said he took notes while the tape was not recording.

Then Detective Fleanor resumed taping the defendant's interview. After taping resumed, the defendant said, "Well, a lot of it has started since we've been down here."[2] The defendant told the detective he touched the victim's belly with his penis. He also stated that one night the victim tried to give him a "blow job;" he stuck his penis in her mouth for a couple of seconds; and he then pulled it away from her. The defendant stated the oral sex occurred only once.

Detective Fleanor and jailer Rhonda Felts identified letters written by the defendant while he was incarcerated. Detective Fleanor read aloud excerpts from three of the letters written to Tina Bosarge in July 1999. In the first letter, the defendant asked, "When you decided to offer [the victim] to me, did she agree to it or did you even ask?" In the second letter, the defendant stated:

> "When we get the kids back, I will show you everything [the victim] and I did. You can watch all you want. You can even join in if you want, okay? ... With [the victim], I just love her. I make love to you. I have sex with her. See the difference?"

---

[1] Due to her age, we will refer to this child by her initials. We will refer to the six-year-old victim as "the victim."

[2] The written transcript of the statement, which was entered into evidence, indicates the defendant said, "Well, all of it started since we've got down here..." Our review of the tape recording indicates this portion of the written transcript is incorrect.

In the third letter, the defendant wrote:

>                   Even with [the victim], I feel that I love you more than her.
> Yes, I love to j_ _k off on her.  Yes, I love to eat her p_ _ _y.  Yes, I
> love to stick my d_ _k in her mouth.   Yes, I even love to stick my
> d_ _k just as far up in her p_ _ _y as I can.  ...  I don't care if I'm
> banging the hell out of [the victim] and c_m all in or over her five
> times in one day, that didn't mean I don't love you  ....  You agree
> you would want [the victim] in bed with us sleeping and having sex
> with us, ....  You gave [the victim] to me to be my second wife.  ....
> Teach her and have fun with her.  I'm going to.  How else is she
> going to learn?  ....  When I c_m on her, I c_m on you.

Detective Fleanor also read aloud notes which Fleanor said were in the defendant's handwriting.  The notes stated:

>                   Eating a six-year-old has its bad and good  ....  Every time I
> eat [the victim], she c_ms, then that's when I want to f_ _k, c_m all
> over that p_ _ _y.  Now if I get her in a 69'er, then there's c_m all
> over her face and in her mouth.  [The victim] is good to c_m on all
> the time.

>                   Sometimes it is hard to get intimate with a six-year-old, but
> I do it.  [The victim] is hard to get started sometimes, but she comes
> around.  If I get her stoned enough, she will suck me off with no
> problems.  Then there's times I have to c_m on her or her p_ _ _y.
> I've been trying to f_ _k her _ss, but she is too small.

Detective Fleanor testified the notes were initialed "PLS," which are the defendant's initials.

Stacy Loveless testified that on February 16, 1999, she met with the defendant at the jail pursuant to his request.  According to Loveless, the defendant told her his first sexual encounter with the victim was in 1997 in Michigan after the victim requested to perform oral sex on him every day.  Loveless stated the defendant told her he, Tina Bosarge, and the victim "had a threesome" during the week of Halloween 1998, after they moved to Tennessee, in which Bosarge and the victim performed sexual acts on him.  Loveless stated the defendant said all three of them smoked marijuana and drank alcohol during this incident.  Loveless said the defendant claimed the victim and Bosarge fought over him, and Bosarge wanted to include the victim in their sexual relations.  Loveless testified the defendant denied penetrating the victim, but told her he had plans to penetrate her when she reached the age of 15 or 16 and have a child with her.

Loveless testified that according to the victim's medical report, the victim said, "Perry f_ _ked my p_ _ _y," while pointing to her vaginal area.  Loveless stated the medical exam results

showed the victim had a normal genital exam which neither confirmed nor excluded the possibility of sexual contact. Loveless further testified the defendant alleged several other people had abused the victim, including the victim's grandfather, but she found no evidence the grandfather abused the victim.

Loveless said the defendant told her photographs taken in 1997 in Michigan depicting sexual acts with the victim had been turned over to the police. Detective Doyle Wall identified a group of photographs brought to the Dickson Police Department by Bosarge. The photographs show the nude victim spreading her legs; the victim performing fellatio on a man appearing to be the defendant; the man placing his penis on the victim's vagina; and the man ejaculating on the victim. Loveless indicated the man in the photos had a tattoo and other physical characteristics similar to the defendant's. Loveless identified a baby in one of the photos as being J.S., the child of the defendant and Bosarge.

The victim, who was seven years old at the time of trial, testified she was scared of the defendant. She was asked to state some of the things the defendant did to her; the victim responded, "F__k" and "blow job." She indicated she would take her clothes off and they would "f__k." She said the defendant would use his "d__ _k" and she would see "c_m" come out of his penis. Her testimony was extremely brief, and she did not state how many times or where this occurred. She did not relate her testimony to any particular date or dates or to any other identifying event or events.

The defendant was convicted by a jury on one count of rape of a child and one count of aggravated sexual battery between November 1 and November 11, 1998; one count of rape of a child and one count of aggravated sexual battery occurring between November 12 and November 21, 1998; one count of rape of a child and one count of aggravated sexual battery occurring between November 22 and November 30, 1998; and one count of rape of a child and one count of aggravated sexual battery occurring between December 1 and December 5, 1998. The trial court imposed an effective sentence of 50 years.

## I. DEFENDANT'S CONFESSIONS

The defendant argues his statements to Detective Fleanor and Stacey Loveless were involuntary and, therefore, should not have been admitted into evidence. This issue is waived as the defendant has failed to cite authority to support his argument. Tenn. Ct. Crim. App. R. 10(b); State v. Schaller, 975 S.W.2d 313, 318 (Tenn. Crim. App. 1997). Regardless of this waiver, we conclude this issue is without merit.

A non-custodial interrogation must be voluntary in order to be admissible. Confessions that are involuntary, i.e., the product of coercion, whether it be physical or psychological, are not admissible. Rogers v. Richmond, 365 U.S. 534, 540, 81 S. Ct. 735, 739, 5 L. Ed. 2d 760 (1961). The test of voluntariness under the Tennessee Constitution is broader and more protective of individual rights than the test of voluntariness under the United States Constitution. State v.

-4-

<u>Stephenson</u>, 878 S.W.2d 530, 544 (Tenn. 1994). The crucial question is whether the behavior of the state's officials was "such as to overbear petitioner's will to resist and bring about confessions not freely self-determined." <u>State v. Kelly</u>, 603 S.W.2d 726, 728 (Tenn. 1980)(quoting <u>Rogers</u>, 365 U.S. at 544, 81 S. Ct. at 741).

There is nothing in the record to indicate state officials overbore the defendant's will. Both Detective Fleanor and Stacey Loveless testified at the pre-trial hearing that the defendant voluntarily agreed to the interview when he made his first confession on December 11, 1998. Detective Fleanor further testified that although the defendant was not in custody, he was advised of his rights and signed an admonition and waiver. Stacey Loveless stated she met with the defendant again on February 16, 1999, at his request. The defendant did not testify at the hearing. The record clearly justifies the trial court's finding that the defendant's statements were voluntary and admissible.

## II. SUFFICIENCY OF THE EVIDENCE

The defendant contends the evidence was not sufficient to support all of his convictions and that, at most, the record supports one conviction for rape of a child and three counts of aggravated sexual battery. The state concedes the evidence was insufficient to support three of the child rape convictions; it agrees with the defendant that the sole proof the defendant committed a child rape in Dickson County, Tennessee, at the times alleged in the indictment, was the defendant's admission that on one occasion, in the middle of November 1998, the child performed oral sex on him. The state maintains the defendant's confession was sufficient to support one child rape conviction and four convictions for aggravated sexual battery. We agree with the state in all respects.

When reviewing the trial court's judgment, this court will not disturb a verdict of guilt unless the facts of the record and inferences which may be drawn from it are insufficient as a matter of law for a rational trier of fact to find the defendant guilty beyond a reasonable doubt. <u>Jackson v. Virginia</u>, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); Tenn. R. App. P. 13(e); <u>State v. Tuggle</u>, 639 S.W.2d 913, 914 (Tenn. 1982). In other words, this court will not reevaluate or reweigh the evidence brought out at trial. It is presumed that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. <u>State v. Harris</u>, 839 S.W.2d 54, 75 (Tenn. 1992); <u>State v. Cabbage</u>, 571 S.W.2d 832, 835 (Tenn. 1978). Since a verdict of guilt removes the presumption of a defendant's innocence and replaces it with a presumption of guilt, the defendant has the burden of proof on the sufficiency of the evidence at the appellate level. <u>State v. Grace</u>, 493 S.W.2d 474, 476 (Tenn. 1973).

### A. Rape of a Child

Rape of a child is the unlawful sexual penetration of a victim by the defendant or the defendant by a victim, if the victim is less than thirteen years of age. Tenn. Code Ann. § 39-13-522(a)(1997). The indictment alleged the defendant committed the four counts of rape of a child by fellatio. Fellatio is a form of sexual penetration. *See* Tenn. Code Ann. § 39-13-501(7)(1997).

In the instant case, the defendant's statements and letters, as corroborated by other evidence, clearly reveals the defendant repeatedly committed heinous sexual offenses against the victim; however, the proof indicates most of these acts occurred outside of Tennessee or were offenses not alleged within the time frame of the indictment. The indictment specified sexual offenses committed on four occasions, as set forth in separate counts; to-wit: Count Two - between November 1 and November 11, 1998; Count Six - between November 12 and November 21, 1998; Count Ten - between November 22 and November 30, 1998; and Count Fourteen - between December 1 and December 5, 1998. The defendant admitted to Detective Fleanor that on one occasion in the middle of November 1998, the victim performed oral sex on him in Dickson County, Tennessee. This corresponds with Count Six, which alleges fellatio between November 12 and November 21, 1998. We agree with the parties this is the sole evidence the defendant committed the crime of child rape within the time frames alleged in the indictment. We conclude the proof was sufficient to convict him of Count Six of the indictment; however, we must conclude the proof was insufficient to convict the defendant of the remaining three counts of rape of a child. Therefore, the defendant's rape of a child convictions under Counts Two, Ten, and Fourteen of the indictment must be reversed and dismissed.

## B. Aggravated Sexual Battery

Aggravated sexual battery is defined as the unlawful sexual contact with a victim by the defendant or the defendant by a victim where the victim is less than thirteen years of age. Tenn. Code Ann. § 39-13-504(a)(4)(1997). "Sexual contact" includes the intentional touching of the victim's or the defendant's intimate parts, or the intentional touching of the clothing covering the immediate area of the victim's or the defendant's intimate parts, if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification. Tenn. Code Ann. § 39-13-501(6)(1997). According to Detective Fleanor's testimony, the defendant in an unrecorded statement admitted he rubbed his penis on the victim on four separate occasions; to-wit: the first of November, in the middle of November, at the end of November, and at the first of December, 1998. These times correspond to the four counts of the indictment alleging aggravated sexual battery between November 1 and November 11, 1998; between November 12 and November 21, 1998; between November 22 and November 30, 1998; and between December 1 and December 5, 1998. The defendant, in his recorded confession, stated he touched the victim with his penis "about three or four times" since living in Tennessee. The proof was sufficient to support the defendant's four convictions for aggravated sexual battery.

## C. Dual Convictions for Child Rape and Aggravated Sexual Battery

Although not raised as error, we address whether dual convictions for child rape under Count Six and aggravated sexual battery under Count Eight violate due process or the prohibition against double jeopardy. Both offenses occurred during the same criminal episode. We conclude under the facts and circumstances of this case there is no due process violation nor double jeopardy violation. *See* State v. Barney, 986 S.W.2d 545, 548-50 (Tenn. 1999) (finding no due process or double

jeopardy violation for both child rape and aggravated sexual battery convictions even though committed during the same criminal episode).

## III. PHOTOGRAPHS

The defendant maintains the trial court erred by allowing the state to present proof of photographs of the victim and a nude man, who, according to witness Stacey Loveless, appeared to be the defendant, engaging in sexual acts. It is undisputed the photographs were taken in Michigan. The defendant also argues the trial court improperly instructed the jury concerning the photos. The state concedes the trial court committed errors, but maintains the errors were harmless. We agree with the state.

### A. Admissibility of Photographs

The defendant poses several specific arguments regarding the admissibility of the photographs. He complains (1) the photographs were not properly authenticated; (2) one of the photographs was not provided until the day of trial; (3) the photographs constituted inadmissible evidence of prior bad acts; and (4) the risk of prejudice created by the photos outweighed their probative value. The state argues the photographs were properly authenticated, concedes they were inadmissible as proof of prior bad acts, but contends their admission was harmless error.

### (1) Authentication

The defendant argues the photographs were not properly authenticated because the state's witness could only testify the man in the photos appeared to be the defendant. We disagree.

The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to the court to support a finding by the trier of fact that the matter in question is what its proponent claims. Tenn. R. Evid. 901(a). Authentication may be accomplished by the testimony of a witness with knowledge that the matter is what it is claimed to be or by proof the evidence has a distinctive characteristic, such as appearance, taken in conjunction with the circumstances. Tenn. R. Evid. 901(b)(4).

In the instant case, a detective testified the photos were brought to the police department by Tina Bosarge. Stacey Loveless testified the defendant told her sexually explicit photos had been turned over to the police. Loveless testified she was familiar with the victim and J.S., the defendant's daughter; Loveless then identified both of them in the photographs. Loveless also testified she was familiar with the defendant's appearance, and the man in the photos had a tattoo, mustache, hair, and build like the defendant's. We conclude this proof was sufficient to authenticate the photographs.

### (**2**) **Discovery Violation**

The defendant also contends he was prejudiced by the prosecution's failure to provide him with one of the photographs until the day of trial. The photo shows the defendant's infant daughter J.S. lying next to a nude man, appearing to be the defendant, on a bed. The defendant has failed to cite authority to support his contention. Accordingly, this issue is waived. Tenn. Ct. Crim. App. R. 10(b); Schaller, 975 S.W.2d at 318. Regardless of this waiver, we conclude the defendant's contentions are without merit.

Where there has been non-compliance with Rule 16 of the Tennessee Rules of Criminal Procedure governing discovery, the trial court has the discretion to fashion a remedy based upon the circumstances of the case. State v. Payne, 791 S.W.2d 10, 16 (Tenn. 1990). Evidence should not be excluded due to non-compliance except when actual prejudice is shown, and the prejudice cannot otherwise be eradicated. *Id*. In the instant case, there is no proof in the record showing the defendant was actually prejudiced by the state's failure to disclose the photograph prior to trial.

### (**3**) **Prior Bad Acts**

Tennessee Rule of Evidence 404(b) provides that evidence of other crimes or acts, although not admissible to prove the character of a person in order to show action in conformity with the character trait, may be admissible for other purposes. Prior to allowing such proof, the trial court should conduct a jury-out hearing, determine whether there is a material issue other than conduct conforming with the character trait, and must exclude the evidence if its probative value is outweighed by the danger of unfair prejudice. Tenn. R. Evid. 404(b); State v. West, 844 S.W.2d 144, 149 (Tenn. 1992)

Generally, this rule is one of exclusion, but there are exceptions. State v. Jones, 15 S.W.3d 880, 894 (Tenn. Crim. App. 1999). The generally recognized exceptions to the rule allow evidence offered to prove motive, identity, intent, absence of mistake, opportunity, or a common scheme or plan. Bunch v. State, 605 S.W.2d 227, 229 (Tenn. 1980). There is no "sex crimes" exception allowing the admission of evidence of sexual crimes by the defendant against the victim committed outside the period of the indictment. State v. Johnson, 53 S.W.3d 628, 631 (Tenn. 2001); State v. Rickman, 876 S.W.2d 824, 829 (Tenn. 1994). Our standard of review of the trial court's determinations under Rule 404(b) is whether the trial court's ruling was an abuse of discretion. State v. Dubose, 953 S.W.2d 649, 652 (Tenn. 1997).

In the instant case, the trial court conducted a jury-out hearing and found the photographs were circumstantial evidence that the "same things continued to happen," and they corroborated the victim's statements contained in the medical report. We respectfully disagree with the trial court's finding that the photos had probative value other than to prove the defendant had previously sexually abused the victim. This is the kind of evidence which is inadmissible under Rule 404(b). Therefore, we agree with the defendant and the state that the trial court erred in admitting the evidence.

**B. Trial Court's Instruction to the Jury**

After the photographs were placed into evidence, the trial court made the following statements to the jury:

> [T]hese are pictures ... they're quite graphic, but it's obvious that these pictures, according to the testimony up to this point, were made in the state of Michigan. The offenses occurring in these pictures occurred in the state of Michigan. They are presented to you for a couple of reasons. One is circumstantial evidence, that the same things continued to happen and happened in this state.
>
> They are also submitted to you ... as corroborative evidence of what the little girl told the doctor.
>
> So you can't find him guilty based solely upon offenses that you think occurred in the state of Michigan, but this is submitted as evidence, as I told you, circumstantial evidence, and that's the only reason you can consider them.

The state concedes the trial court erred in giving these instructions to the jury. We must agree.

As previously discussed, evidence of prior offenses or acts is not admissible as proof of the defendant's character to show he acted in conformity with the character trait. Tenn. R. Evid. 404(b). The purpose of this rule is to prevent the jury from improperly convicting a defendant for his or her bad character or propensity or disposition to commit a crime regardless of the strength of the evidence. *See* Rickman, 876 S.W.2d at 828. Therefore, the trial court erred in telling the jury it could consider the photographs as circumstantial evidence of the defendant's guilt.

**C. Harmless Error**

The record indicates prior to the start of the trial, the defendant moved the trial court to exclude evidence of the defendant's acts against the victim in Michigan, and the trial court granted the defendant's motion. During trial, defense counsel twice questioned state witnesses regarding the Michigan acts. Upon the state's inquiry and during a jury-out hearing, defense counsel announced to the trial court that the defendant's only defense was venue; therefore, he would argue any offense defendant committed had occurred in Michigan rather than Tennessee. Thus, from defendant's perspective, the Michigan acts, although not the actual pictures, were relevant to his defense. Further, the defendant confessed to Detective Fleanor he committed one offense of child rape and four offenses of aggravated sexual battery, which corresponded to the times alleged in various counts of the indictment. The other evidence introduced against the defendant, including his writings, were devastating. Given these facts, we conclude the trial court's errors in allowing the photographs into

-9-

evidence and in instructing the jury how it could consider them were harmless. *See* Tenn. R. App. P. 36(b).

## IV. DEFENDANT'S LETTERS AND NOTES

On appeal, the defendant submits the trial court erred in allowing the state to present evidence of the defendant's letters and notes because they referred to prior bad acts outside the period of the indictment and to acts not included in the indictment. The record shows a hearing was held approximately two months before trial. The trial court found the letters might be relevant, but their prejudicial effect might outweigh their probative value. Therefore, the trial court instructed the defendant to specify prior to trial which parts of the letters it wanted the court to redact; the trial court indicated it would then rule on their admissibility. The prosecutor announced she would meet with defense counsel to see if they could agree to the admissibility of portions of the letters; she stated that if they could not agree, they would request a ruling from the trial court.

At trial, just prior to entering excerpts from the defendant's letters into evidence, the state announced to the trial court, "Your Honor, as you know, we've already agreed on these letters." The defendant then objected to the evidence, arguing only that the state had not authenticated the letters. While discussing this objection, the trial court and the prosecutor mentioned a hearing apparently held just prior to the start of the trial in which the admissibility of the letters was determined. The appellate record does not contain a transcript of this hearing.

In response to the defendant's objection, the state presented the testimony of jailer Rhonda Felts, who identified the letters as being in the defendant's handwriting. Then the state presented the excerpts from the letters to the jury without further objection from the defendant.

It is the duty of the accused to provide a record which conveys a fair, accurate and complete account of what transpired with regard to the issues which form the basis of the appeal. Tenn. R. App. P. 24(b); *see* State v. Taylor, 992 S.W.2d 941, 944 (Tenn. 1999). Regardless, the testimony of the jailer, who identified the defendant's handwriting, was sufficient to authenticate the letters.

## V. QUALIFICATION OF A WITNESS

The defendant argues the trial court improperly allowed the state to ask leading questions of witness Stacey Loveless after she had been recalled to the stand by the defendant. He also claims the trial court erred in allowing Loveless to testify as to the victim's medical exam, statements other children had made to her regarding the meaning of the expletive "f_ _king," and the results of Loveless' investigation into the defendant's allegations that a relative sexually abused the victim. This issue is waived as the defendant has failed to cite authority to support his argument. Tenn. Ct. Crim. App. R. 10(b); Schaller, 975 S.W.2d at 318.

## VI. ELECTION OF OFFENSES

It is the defendant's contention the trial court erred in not requiring the state to elect the offenses upon which it chose to proceed.

The doctrine of election requires the state to elect a set of facts when it has charged a defendant with one offense, but there is evidence of multiple offenses. State v. Brown, 992 S.W.2d 389, 391 (Tenn. 1999). This doctrine is applied to ensure that the defendant can prepare for the specific charge, to protect the defendant from double jeopardy, and to ensure that some jurors do not convict on one offense and other jurors on another. State v. Shelton, 851 S.W.2d 134, 137 (Tenn. 1993). Issues of jury unanimity usually arise where the state presents evidence showing more than one criminal offense, but the underlying charging instrument lacks specificity as to the offense for which the accused is being tried. State v. Brown, 762 S.W.2d 135, 136-37 (Tenn. 1988).

In the instant case, the indictment specifically alleged the defendant committed four counts of child rape by fellatio on four distinct occasions: between November 1 and November 11, 1998; between November 12 and November 21, 1998; between November 22 and November 30, 1998; and between December 1 and December 5, 1998. It also alleged he committed four separate acts of aggravated sexual battery during each of those time periods. These distinct time periods corresponded with the defendant's confession relating to discrete acts on the first of November, the middle of November, the end of November, and the first of December. Though there was evidence of other offenses, none of those offenses met the description of the allegations made in the indictment. The jury was presented with a single set of facts with respect to each count charged. Therefore, we conclude the trial court did not err in failing to require the state to make an election.

## VII. LESSER-INCLUDED OFFENSE

The trial court did not charge any lesser-included offenses of aggravated sexual battery. The defendant maintains the trial court erred in not charging the jury as to Class B misdemeanor assault as a lesser-included offense of the indicted offenses of aggravated sexual battery. Class B misdemeanor assault is the intentional or knowing physical contact with another which a reasonable person would regard as extremely offensive or provocative. Tenn. Code Ann. § 39-13-101(a)(3). Our state supreme court has held Class B misdemeanor assault is a lesser-included offense of aggravated sexual battery. *See* State v. Swindle, 30 S.W.3d 289, 293 (Tenn. 2000).

If an offense is found to be a lesser-included offense, the court must next ascertain whether the evidence justifies a jury instruction on the lesser-included offense. State v. Bowles, 52 S.W.3d 69, 75 (Tenn. 2001). To do so, the court must first determine whether there is evidence that "reasonable minds" could accept to establish the lesser-included offense. State v. Burns, 6 S.W.3d 453, 469 (Tenn. 1999). The court must view the evidence liberally in a light most favorable to the existence of the lesser-included offense without judging its credibility. State v. Ely, 48 S.W.3d 710,

722 (Tenn. 2001); Burns, 6 S.W.3d at 469. Finally, the court must determine if the evidence is "legally sufficient" to support a conviction for the lesser-included offense. Burns, 6 S.W.3d at 469.

Based on Swindle, we determine there was evidence in the instant case which could have been accepted by reasonable minds to establish Class B misdemeanor assault, and the evidence was legally sufficient to support a conviction for that offense. Though we find the trial court erred by failing to charge the lesser-included offense, we conclude the error is harmless.

Harmless error relating to the failure to charge lesser-included offenses must be shown "beyond a reasonable doubt." Ely, 48 S.W.3d at 727. The proper inquiry is "whether it appears beyond a reasonable doubt that the error did not affect the outcome of the trial." State v. Allen, 69 S.W.3d 181, 191 (Tenn. 2002). In making the harmless error determination, this court must "conduct a thorough examination of the record, including the evidence presented at trial, the defendant's theory of defense, and the verdict returned by the jury." *Id.*

Having conducted a thorough examination of the record, we can only conclude the sexual contact offenses were committed for the sexual arousal or gratification of the defendant. A reasonable mind could reach no other conclusion. The defendant's theory at trial was the state's proof was not sufficient to establish venue in Dickson County, Tennessee, and any offenses were committed in Michigan. Further, the verdict reflects the jury rejected the defendant's theory and adopted the state's. Therefore, the trial court's failure to instruct the jury as to the lesser-included offense of Class B misdemeanor assault was clearly harmless beyond a reasonable doubt.

## VIII. TRIAL COURT'S ORAL RESPONSE TO THE JURY'S QUESTION

During the jury's deliberations, the jury foreperson asked the trial court, "Counts II and IV, what do they – where do they get the dates?" The trial court responded as follows:

> Members of the jury, that would be me commenting on the evidence after the evidence is closed. You'll have to remember what was testified in trial. You'll have to take the exhibits back there, and you'll have to glean that through that. I can't reopen the evidence. You'll have to take what you got and go with it. I can't comment on the evidence after you got it back there. You're going to have to take the evidence you've heard, plus the exhibits you've got back there, and attempt to answer the questions.

The defendant contends the trial court erred in allowing the jury to take exhibits to the jury room, and the supplemental instruction was not in writing. Defendant waived this issue by failing to include it in his motion for new trial. Tenn. R. App. P. 3(e); *see* State v. Walker, 910 S.W.2d 381, 386 (Tenn. 1995). Further, jurors are allowed to take exhibits to the jury room for use during deliberations. *See* Tenn. R. Crim. P. 30.1. Although we believe the trial

court should have put its response to the jury's question in writing, *see* Tenn. R. Crim. P. 30(c), we envision no prejudice to the defendant. *See* State v. Gorman, 628 S.W.2d 739, 740 (Tenn. 1982). This issue is without merit.

## CONCLUSION

Accordingly, we reverse and dismiss the defendant's convictions for rape of a child as alleged in Counts Two, Ten, and Fourteen of the indictment. The remaining conviction for rape of a child in Count Six and the four convictions for aggravated sexual battery are affirmed.

As to defendant's sentences, the trial court sentenced defendant to 25 years on each child rape conviction and 12 years on each aggravated sexual battery conviction, with two of the child rape convictions to run consecutively and all other sentences to run concurrently, for an effective sentence of 50 years. Sentencing was not raised as an issue on appeal. In light of our dismissal of three child rape convictions, we remand to the trial court for a determination of whether any of the aggravated sexual battery convictions should run consecutively to the child rape conviction.

_____
JOE G. RILEY, JUDGE