**STATE of Tennessee, Appellee,**

v.

**James BROWN, Appellant.**

Supreme Court of Tennessee, at Nashville.

Nov. 28, 1988.

Robert D. Massey, Henry & Massey, Pulaski, for appellant.

W.J. Michael Cody, Atty. Gen. & Reporter, Albert L. Partee, III, Asst. Atty. Gen., Nashville, Thomas M. Bottoms, Dist. Atty. Gen., Lawrenceburg, Richard H. Dunavant, Asst. Dist. Atty. Gen., Pulaski, for appellee.

OPINION

O'BRIEN, Justice.

James Brown appeals from his conviction for committing aggravated sexual battery on a six-year-old girl. He was sentenced to serve thirty (30) years in the penitentiary. He raises four (4) issues for reversal on this appeal:

(1) The trial court refused to grant a defense motion for a bill of particulars.

(2) He was prejudiced by the State's refusal to produce material evidence discoverable in accordance with Tenn.R. Crim.P. 16(a)(1)(A).

(3) The trial court admitted testimony of a Tennessee Department of Human Services employee regarding the sexual tendencies of a sexually abused child. (4) The trial court refused to require the State to elect the particular offense upon which it relied for conviction.

The Court of Criminal Appeals considered each of the issues raised here and found error on each of them except the matter of election of offenses by the prosecutor. They found the errors to be harmless or matters of minimal prejudice not warranting reversal. Their analysis of the election issue was that the proof made out only one criminal offense and for that reason the trial court did not err in failing to require an election. We disagree with that conclusion reached by the Court of Criminal Appeals and reverse the judgment below.

■ On the election issue defendant argues that the State put on proof of three separate offenses. The first, when the defendant purportedly kissed the child while she, her mother and he were in her mother's apartment. On two other occasions it is said they offered proof he allegedly touched her genital area with his penis. On one of these the proof showed he actually effected penetration. We find, after several readings of the child's testimony, that she was referring to two separate incidents. The first when they, all three, were in the bed, nude, at night. The second incident was the following morning when defendant and the child's mother took her into a bedroom and the defendant "stick[ed] his wrong spot in mine." The child's testimony was hesitant and she was obviously reluctant to discuss the circumstances of the separate events. In her confusion she mentioned other incidents, which may or may not have occurred. We are satisfied the State proved only two offenses.

As the Court of Criminal Appeals opinion reported the second event, "she demonstrated on anatomically correct dolls what parts of the body constitute 'wrong spot,' and although the record does not specify what body parts were involved, a fair read-ing indicates that the child was referring to her genitals and those of the defendant. She testified that he continued this sexual contact until she told him, 'its hurting.' At that point, she said, she dressed and went back into the living room to watch television." The Court of Criminal Appeals rationalized, "... the jury could not reasonably have found that the defendant's conduct in merely kissing the victim, even while both of them were nude and in close physical proximity, was a violation of the statute defining aggravated sexual battery." Hence, ... "the charge would have been subject to dismissal at the conclusion of the proof upon motion for judgment of acquittal under Tenn.R.Crim.P. 29(a), because there was 'insufficient evidence to sustain a conviction of such offense.' "

The problem we find with this rationalization is that the District Attorney General representing the State asked the child specifically if she remembered anything happening in the bed. The child responded, "when my mother was getting these pads, I don't know what they're for, then James was kissing me." He had her demonstrate the kissing incident by the use of anatomically correct dolls commonly used for such purposes. He also had her use the dolls to describe the incident which occurred the following morning when she said he penetrated her until it hurt.

Defense counsel subpoenaed the entire file of the Department of Human Services involving the parties. The trial court ordered this file to be included in the record for appeal purposes. That file contains the case worker's notes on an interview with the child on 31 December 1984 when she first reported the assault made on her by the defendant. On the occasion when he purportedly was kissing her she related, in childish language, "me, James and Mom were in the bed. Mom was where you aren't supposed to be." James "made me sit on his mouth," "he was licking me where I do do." The child demonstrated for the social worker, using dolls to indicate the positions of each of them. She laid the doll named James down on his back and put the doll simulating the child sitting

on the face of the one lying down. She put the other doll, representing her mother, sitting on the genital area of the doll lying down. Of course this information was not transmitted to the jury. However, they did see a demonstration by the child, with the dolls replicating the exact same event. They did hear the Attorney General argue that the child testified that defendant was kissing her and that on the next day he "put his wrong spot in her wrong spot." They heard the argument that when she was talking about where James was kissing her, "she took the clothes off of the little girl doll, and that was her ..., and she took the clothes off the doll that was James and showed her ... to be on top of him with no clothes on, both of them. And at that point he was kissing her. Now, I don't think you can come to any conclusion other than that particular touching was for the purpose of sexual gratification on the part of the defendant." They heard him argue that, "the next thing she showed you was where he was sitting, she was sitting, this was the next morning, both of them still unclothed at this point, where he was in that position, and you saw what she showed you, he was putting his wrong spot into her wrong spot. No doubt that too could be construed as nothing other than for the purpose on the part of the perpetrator of this offense of sexual gratification."

It was obvious that the child described and demonstrated two separate instances of aggravated sexual battery. It is equally obvious that the State's attorney argued two separate instances of aggravated sexual battery. The defense moved the court to require the State to elect which of the two incidents that the State allegedly claimed had occurred. The trial judge overruled the motion.

In an unbroken line of cases extending back many years the law has been clear that an exception is made in cases of this nature to the general rule that evidence of offenses other than that for which the defendant is on trial cannot be introduced against him. The great weight of authority is in favor of the admissibility of prior acts in sex cases. See *Sykes v. State,* 112 Tenn. 572, 576, 82 S.W. 185 (1903). In *Jamison v. State,* 117 Tenn. 58, 61, 94 S.W. 675 (1906) the court cited from *Sykes,* supra to explain that in prosecutions for violation of the age of consent law and cognate crimes, evidence of other acts of intercourse both prior and subsequent to the act charged in the indictment is competent, as tending to establish the commission of the special act under examination, as corroborative of the evidence of witnesses testifying thereto, and for the purpose of showing the relation of the parties. In *Burlison v. State,* 501 S.W.2d 801 (Tenn.1973), the Court cited *Jamison,* supra, and a number of other cases to reiterate that, in cases involving the violation of the age of consent law, evidence of other acts of illicit intercourse between the same parties is competent evidence, but that the State could be required to elect the specific offense upon which a verdict of guilty is demanded. The reasons for the requirement of election is (1) to enable the defendant to prepare for and make his defense to the specific charge; (2) to protect him from double jeopardy by individualization of the issue and; (3) so that the jury's verdict may not be a matter of choice between offenses with some jurors convicting on one offense and others on another. *Burlison* has been followed in *State v. Fears,* 659 S.W.2d 370 (Tenn.Cr.App.1983) and in *State v. Mitchell,* 737 S.W.2d 298 (Tenn.Cr.App.1987), stating that the necessity for requiring the State to make an election of the particular offense it will rely on for conviction is fundamental, immediately trenching [on] the constitutional rights of an accused. The trial court erred in denying election and this issue must be sustained.

▮▮▮▮ The Court of Criminal Appeals found error in each of the other three issues raised in this Court but did not consider them to warrant reversal. In the event of retrial these remaining matters can be resolved. A bill of particulars is no longer required. The defendant has been fully apprised of all the facts surrounding the time, place and circumstances of the offense with which he is charged. In reference to the claim of prejudice for failure to respond to a discovery motion, as the inter-

mediate appellate court found, the Department of Human Services file was several inches thick and included numerous papers and reports totally unrelated to the events giving rise to the instant prosecution. Defendant complains he was denied discovery of his own statement, a medical report of the child's examination, and a report of an interview between a social worker and the child, all contained in the Human Services file. These will all be available to him at a new trial, as well as any other properly discoverable material. Also, the trial court will be in a position to reconsider the admission of the testimony of the Department of Human Services supervisor in reference to her testimony as an expert.

The judgment below is reversed and the case remanded to the trial court for further proceedings. Costs of this appeal are taxed against the State.

HARBISON, C.J., and FONES, COOPER and DROWOTA, JJ., concur.