IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
June 20, 2000 Session

## JOEY LEE SMITH v. STATE OF TENNESSEE

## Appeal from the Circuit Court for Bedford County
## No. 8062     William Charles Lee, Judge

---

## No. M1999-01896-CCA-R3-PC - Filed April 12, 2001

---

In April of 1995, a Bedford County jury convicted the petitioner of one count of child rape, multiple counts of aggravated sexual battery, one count of sexual battery, and two counts of reckless endangerment.[1] For these offenses he received an effective sentence of nineteen years. Having unsuccessfully pursued a direct appeal, the petitioner filed a pro se post-conviction petition and subsequently received appointed counsel. Through his amended petition the petitioner contended that counsel's alleged misdeeds had risen to the level of ineffective assistance of counsel and also that certain actions taken by the trial court had violated his due process rights. The trial court conducted an evidentiary hearing on these matters and denied the petitioner relief. From this denial the petitioner brings this action again asserting that he received ineffective assistance both at trial and on direct appeal.[2] However, following our review of the record, we find that the trial court correctly denied the petition, and we, therefore, affirm the lower court's decision.

**Tenn. R. App. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JERRY L. SMITH, J., delivered the opinion of the court, in which DAVID H. WELLES and JOHN EVERETT WILLIAMS, JJ., joined.

Hershell Koger, Pulaski, Tennessee, for the appellant, Joey Lee Smith.

---

[1] Apparently the jury convicted the petitioner of an additional reckless endangerment count, but the trial court later overruled and dismissed this conviction.

[2] As aforementioned, the petitioner's amended petition includes a separate due process issue, but his brief only lists the ineffective assistance claim (Trial counsel's decision not to assert the alleged due process violation on direct appeal remains as one of counsel's alleged failures.).

Paul G. Summers, Attorney General and Reporter; Lucian D. Geise, Assistant Attorney General; Mike McCown, District Attorney General; and Robert G. Crigler, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION
## FACTUAL BACKGROUND

In deciding the petitioner's case on direct appeal, this Court summarized the facts relevant to the more severe offenses as follows:

> The evidence submitted at trial and accredited by the jury's verdict reveals that the male victim of the rape and aggravated sexual batteries was age eleven at the time of the crimes. Appellant, age twenty-five, and the victim were friends. The victim first met Appellant when Appellant was the neighborhood paperboy. In 1993, the victim began his own paper route. Appellant would help the victim with his paper route by driving him through the route. Around April 15, 1994, Appellant showed the victim a document which he claimed was a will and told the victim that he was leaving everything to the victim when he died. The victim testified that the sexual abuse began in April and lasted until August. He explained that every instance of misconduct was the same. According to the victim, he and Appellant would go into Appellant's bedroom and Appellant would lay down a sheet or a towel. Then Appellant "would take my clothes off and would start playing with me and take his clothes off and would stick his thing between my legs." The victim would lay on his stomach while Appellant lay on top of him. Appellant would move around until he ejaculated. Appellant testified to a total of six occurrences. In addition, in July, Appellant required the victim to perform fellatio on him.
> The male victim of the sexual battery stated that he was sixteen when he spent the night with Appellant in January 1993. Before the victim went to bed, he saw a gun in Appellant's hands and then observed the gun on a dresser pointed in his direction. Appellant got into bed with the victim and began running his hands up the victim's leg. Then Appellant grabbed the victim's penis and squeezed it, at which point the victim rolled over and away from Appellant.

State v. Joey Lee Smith, No. 01C01-9603-CC-00108, 1997 WL 438165 at *1 (Tenn. Crim. App. at Nashville, July 31, 1997).[3]

At the post-conviction hearing the petitioner testified that he had approached Andrew Jackson Dearing III to represent him when the charges arose and subsequently retained Mr.

---

[3] This Court previously found the convicting proof against the victim so strong that it issued an order affirming the conviction pursuant to Rule 20 of the Court of Criminal of Tennessee.

Dearing as counsel. According to trial counsel's testimony he had practiced law for three or four years prior to handling the petitioner's case. During this period of years, sixty-five to seventy-five percent of his work had been in the area of criminal law. Mr. Dearing not only represented the petitioner at trial but also pursued his direct appeal. By way of this post-conviction petition, the petitioner asserts that Mr. Dearing provided ineffective representation in both arenas.

## POST-CONVICTION STANDARD OF REVIEW

In analyzing the issues raised, we first note that a petitioner bringing a post-conviction petition bears the burden of proving the allegations asserted in the petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-210(f). Moreover, the trial court's findings of fact are conclusive on appeal unless the evidence preponderates against the judgment. Tidwell v. State, 922 S.W.2d 497, 500 (Tenn. 1996); Campbell v. State, 904 S.W.2d 594, 596 (Tenn. 1995); Cooper v. State, 849 S.W.2d 744, 746 (Tenn. 1993).

## INEFFECTIVE ASSISTANCE OF COUNSEL

### A. Standard of Review

We are required to observe the following standard of review in cases alleging ineffective assistance of counsel. When a petitioner seeks post-conviction relief on the basis of ineffective assistance, the petitioner must prove "that (a) the services rendered by trial counsel were deficient and (b) the deficient performance was prejudicial." Powers v. State, 942 S.W.2d 551, 558 (Tenn. Crim. App. 1996). To satisfy the deficient performance prong of this test, the petitioner must establish that the service rendered or the advice given was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). Furthermore, to demonstrate the prejudice required, the petitioner must show that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984). "Because a petitioner must establish both prongs of the test to prevail on a claim of ineffective assistance of counsel, failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." Henley v. State, 960 S.W.2d 572, 580 (Tenn. 1997) As a matter of fact, "a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component ." Id.

### B. Specific Allegations

Through this petitioner's petition, factual presentation, and argument, he mentions a total of approximately fourteen different alleged errors made by Mr. Dearing. However, of these only six are actually argued in his brief. Thus, at the outset we find the remaining unargued allegations waived under Rule 10(b) of the Court of Criminal Appeals of Tennessee. See also, State v. Taylor, 814 S.W.2d 374, 378 (Tenn. Crim. App. 1991).

Among the surviving claims the petitioner contends that trial counsel erred by: (1) not calling the petitioner as a witness at trial; (2) not interviewing Tara Smith Freeman prior to trial and not having her testify at trial; (3) not objecting to leading questions which helped establish the date of various offenses; and (4-6) not raising issues relative to the prosecution's leading, the failure to elect, and the trial court's alleged violation of the petitioner's due process rights. He then concludes that these failings affected the verdict rendered.

## 1. Not Calling the Petitioner As a Witness at Trial

Addressing these in the above order, we first consider the petitioner's contention that trial counsel erred in not calling the petitioner as a witness at trial. In advancing this assertion, the petitioner argues that he had given no statement concerning these offenses and had no prior criminal record which could have been used to impeach him. He further proclaims that his testimony would have provided potential alibi information; his personal denial of the allegations; details casting doubt upon the stability of at least one of the victims; etc. However, when asked at the post-conviction hearing, he also acknowledged that he likely would have been forced to make a number of admissions on cross-examination. These would have included that he had access to C.L.,[4] the victim of most of the offenses, for approximately three hours each weekday in connection with delivering papers;[5] that this victim had spent the night with him on at least two or three occasions; and that this young man might have been among those to whom he had sent balloons at school. Under these circumstances trial counsel advised the petitioner to not testify.[6] In counsel's opinion the petitioner "couldn't say anything that would help his case other than I didn't do it" but his testimony would have bolstered the State's assertions and its witnesses' testimony. Trial counsel's intent was to discredit the victims; thus, he believed the petitioner's providing details supporting important aspects of the victims' accounts would be quite harmful. Weighing the above factors in the balance, counsel made the aforementioned recommendation to his client against testifying.

After analyzing this situation, we conclude that the petitioner has failed with respect to both prongs of the applicable test for determining the effectiveness of counsel. In its findings the trial court described the defense's choice not to call the petitioner as a tactical decision. On more than one occasion our Supreme Court has affirmed the idea that the reviewing court assessing the performance of counsel is not "to 'second guess' tactical and strategic choices pertaining to defense matters or to measure a defense attorney's representation by '20-20 hindsight.'" Henley at 579. See also, Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). The decision in the case presently before us was a rational one and does not constitute deficient performance. However, even if the first prong of the test for ineffective assistance were met, the petitioner has failed to prove by clear and

---

[4] In cases of this nature, the Court does not include the under-aged victims' names.

[5] According to the petitioner's account of these outings, there were multiple occasions during which he and C.L. were together without another individual's being present.

[6] While the petitioner essentially states that trial counsel refused to let him testify, trial counsel avers that he advised the petitioner against doing so but ultimately left the decision to the petitioner. The trial court accredited trial counsel's testimony on this point, and we do not find that the evidence preponderates against this determination.

-4-

convincing evidence that the results of the trial would have been different had he testified. Thus, this issue lacks merit.

### 2. Not Interviewing or Calling Tara Smith Freeman As a Witness at Trial

Moving to a similar alleged error by trial counsel, the petitioner claims that Mr. Dearing should have interviewed and called Tara Smith Freeman as a witness. It is the petitioner's contention that she would have set out a theory of another individual's having brainwashed the victims into bringing these allegations, and she did testify consistently with this idea at the evidentiary hearing. However, she acknowledged that she and the petitioner are related; that she had made and recanted allegations of sexual abuse by the petitioner; that she had become pregnant at the age of twelve (Apparently she would have been noticeably pregnant at trial.) and had a child at thirteen; that she had been heavily involved with drugs; that she "is very easily confused;" and that she suffers from "severe mental illness." Trial counsel's inquiry[7] into this situation revealed most of these problems, and again the defense made the tactical decision to not call this witness. Trial counsel offered numerous reasons leading to the conclusion that her testimony would have been more prejudicial than beneficial.

From our review we find ourselves in agreement with the trial court's determination that the choice not to call this witness and to not pursue the brainwashing defense was a well made, tactical one. We, therefore, conclude that the defense has failed to show deficient performance, to prove that the outcome of his trial would have been different had this witness been called, and to overcome the presumption of correctness afforded the trial court's finding. Thus, this claim is meritless.

### 3. Not Making Various Objections to Leading

As aforementioned, the petitioner also contends that trial counsel provided ineffective assistance by not objecting to leading questions asked by the prosecution in order to establish the dates of the offenses. To support this claim the petitioner cites in the argument section of his brief numerous alleged objectionable instances of such leading and argues that he would not have been convicted had trial counsel voiced proper objections.

While it is true that Mr. Dearing did not object to each instance in which the State suggested a date, he did raise sustained objections on three occasions. Furthermore, the trial judge noted during the post-conviction hearing that precedent seems to suggest that some leading questions are proper to help better pin-point the time frame involved in sex abuse cases. Providing appropriate guidelines in the use of such questions, the Tennessee Supreme Court has recommended making leading references to holidays, birthdays, the beginning or ending of school, etc.[8] See, e.g., State v. Shelton,

---

[7] While counsel did not speak directly to this potential witness, he did investigate the situation by reading the letter she had provided the petitioner; researching her mental state and history through the Department of Human Services; talking with the alleged brain-washer and with C.L. about this claim; etc.

[8] The cases cited by the trial court speak more directly to the State's not having to prove that the offense
(continued...)

851 S.W.2d 134, 138 (Tenn. 1993); State v. Byrd, 820 S.W.2d 739, 742 (Tenn. 1991). Beyond these implicit references caselaw exists which supports affording the State somewhat greater latitude in leading child sex abuse victims. See, e.g.,; Swafford v. State, 529 S.W.2d 748, 749 (Tenn. Crim. App. 1975); State v. Nicely, No. 01C01-9506-CC-00160, 1996 WL 233985 at *2 (Tenn. Crim. App. at Nashville, May 9, 1996). Two of the four witnesses were such victims. Among the examples of leading concerning these two minors are instances in which the State asked questions involving the end of school, "when the [petitioner] showed [the victim] the will," and the Fourth of July. Had counsel objected in these instances, it is unlikely that the trial court would have sustained such objections.[9] Additionally, though the trial court did not make a specific finding with respect to counsel's alleged failures to object, we observe that counsel's inaction may also have reflected a tactical decision. Here trial counsel objected on occasion; chose not to object at times; and later engaged in stringent cross-examination of selected victims concerning the dates/times of occurrence for these offenses. This is a valid tactical decision regarding how best to impeach the testimony of prosecution witnesses. [10] Moreover, the petitioner has failed to prove that the trial would have ended differently had counsel voiced constant objection. For these reasons the petitioner is not entitled to relief on this issue either.

### 4. Not Raising on Direct Appeal the Alleged Failure to Object to Leading

Turning to a related matter, the petitioner alleges that trial counsel provided ineffective assistance by not arguing "the leading question issue ... on direct appeal." In view of our finding on the previous issue, we conclude that this issue also lacks merit.

### 5. Not Raising on Direct Appeal "the Election Issue"

Next, we look to the petitioner's claim that Mr. Dearing erred by not raising on appeal "the election issue." However, we do not see a clear argument in the petitioner's brief concerning election. The only authority cited on this matter by the petitioner involves the failure of trial counsel to raise issues on appeal but does not mention election. As such, the caselaw does nothing to assist this Court in divining the petitioner's complaint. Therefore, the petitioner has waived this issue. See Tenn. Ct. Crim. App. R. 10(b). However, within his statement of the facts, the petitioner claims "that

---

[8](...continued)
occurred on a specific date in order to support a valid conviction in these types of cases.

[9] To support this assertion, we point not only to the aforementioned caselaw and to the trial court's above-noted comment concerning dates but also to the trial court's stating during trial, "[t]he court realizes the age of the witness and will allow a certain mount of leading." The trial court made the latter remark in reference to an objection by the State as counsel questioned a female witness who apparently was merely a year younger than C.L. (Interestingly, the transcript of the girl's testimony reveals significant leading on numerous occasions by trial counsel; however, the State chose to make very few objections to this conduct.)

[10] We also observe that according to cases such as State v. Brown, 992 S.W.2d 389, 392 (Tenn. 1999), "[t]he State is not required to prove that an offense was committed on a specific date unless the date is an element of the crime or essential to proving the offense." See also, Byrd, at 741-42. While the State at the point of election chose to use dates in distinguishing some events involving C.L., the dates in controversy were not otherwise relevant to the validity of the petitioner's charges or convictions.

at trial the State was not required to elect offenses." The record on appeal belies this assertion; our review of the trial transcript made an exhibit to this appeal reveals approximately six full pages dealing with the State's elections on various counts. Whether based on waiver or this issue's merit, this allegation does not entitle the petitioner to relief from his convictions.

### 6. Not Raising on Direct Appeal the Due Process Claim

The petitioner's remaining claim deals with trial counsel's alleged failure on direct appeal to raise an alleged due process violation concerning the trial court's comments to the prosecution following the cross-examination of one of the victims. More specifically, during a jury out break following the cross-examination of C.L. but before the State was afforded the opportunity to redirect, the trial court indicated that the State faced a problem concerning it's proof on various indictments. While C.L. had testified about more than enough instances of abuse for the number of indictments, the trial court expressed its belief that three[11] of the indictments involving this victim had not been proven in sufficient detail to guarantee the requisite unanimity from the jurors.[12] Therefore, the trial judge announced while the jury was out: "I am going to dismiss for that reason the other counts unless [the State] can give [these jurors] ... something that they can hang their hats on ...."

Because the underlying alleged error was not raised on direct appeal, Overton v. State, 874 S.W.2d 6 (Tenn. 1994) precludes collateral review of the issue in the guise of an ineffective assistance claim. Our Supreme Court stated in Overton: "allow[ing] every error committed by the trial court to be recast in a post-conviction petition as an ineffective assistance of counsel allegation would be to subvert the limited purposes of the post-conviction procedure." Id. at 12. Moreover, Sasser v. Averitt Exp., Inc., 839 S.W.2d 422 (Tenn. App. 1992), the only case cited by the petitioner in support of this claim, is easily distinguishable. While this civil appeal does make reference to the trial court's need to maintain impartiality, the reference comes in connection with an allegation that the trial court had instructed the jury on factual matters and, thereby, had improperly influenced the jurors. Id. at 430-431. However, in the case presently before this Court, the discussion concerning the lack of proof took place entirely out of the presence of the jury, thus, eliminating the possibility that the jurors would have been influenced by the trial court's statements. In addition, the trial court at the post-conviction hearing accredited the testimony of trial counsel including his statement that he had researched this area prior to filing the direct appeal and concluded that it would not be a viable issue. In view of the fact that the petitioner presently cites only inapposite authority for this claim, the evidence does not preponderate against the trial court's finding. This issue is without merit.

### CONCLUSION

---

[11] Though the trial court originally indicated that only two counts had been adequately proven, it appears by the end of the discussion that specificity existed for the child rape and three aggravated sexual battery charges involving C. L.

[12] The law is well established in this State that jurors must agree on one particular event to support a valid conviction. For example, in State v. Brown, 762 S.W.2d 135, 137 (Tenn. 1988), the Court provides "that the jury's verdict may not be a matter of choice between offenses with some jurors convicting on one offense and others on another."

-7-

For the foregoing reasons we find that none of the petitioner's ineffective assistance allegations merit relief. Accordingly, the judgment of the trial court is AFFIRMED.

_____
JERRY L. SMITH, JUDGE