IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs January 21, 2026

## KENNETH GEORGE ARNOLD v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Hamilton County**
**No. 313931   Barry A. Steelman, Judge**

_____

### No. E2025-00368-CCA-R3-PC
_____

The Petitioner, Kenneth George Arnold, appeals from the Hamilton County Criminal Court's denial of his petition for post-conviction relief from his convictions for rape, aggravated sexual battery, and sexual battery by an authority figure, for which he is serving an effective thirteen-year sentence. On appeal, he contends that the post-conviction court erred in denying relief on his claims that he received the ineffective assistance of pretrial, trial, and appellate counsel and that relief was required due to the cumulative effect of multiple instances of deficient performance by his attorneys in the conviction proceedings. We affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which JOHN W. CAMPBELL, SR., and STEVEN W. SWORD, JJ., joined.

Brandy Lachelle Spurgin-Floyd, Chattanooga, Tennessee, for the appellant, Kenneth George Arnold.

Jonathan Skrmetti, Attorney General and Reporter; Katherine C. Redding, Assistant Attorney General; Coty Wamp, District Attorney General; and P. Andrew Coyle, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The Petitioner's convictions relate to sexual abuse of his stepdaughter. He gave inculpatory pretrial statements to the police, which were received as evidence at the trial. In his statements, he admitted that he allowed the victim to "do things and go places" and that he bought an item for her at the mall in exchange for her manually and orally stimulating him and his performing cunnilingus on her. A defense expert, Dr. Robert J.

Brown, Jr., testified at the trial that the Petitioner was competent to stand trial and had a history of childhood sexual abuse and child abuse resulting in anoxic brain injury at the hands of his stepbrother. Dr. Brown opined that the Petitioner met two of the four prongs of the clinical criteria for diminished capacity but acknowledged that the Petitioner understood the wrongfulness of his conduct by the time of his confession to sexually abusing the victim. Dr. Brown stated that the defendant had the capacity to act intentionally or knowingly but did not have the capacity to intentionally or knowingly harm the victim. The Petitioner's sister also testified about the Petitioner's history of childhood physical and sexual abuse and his lifelong history of psychiatric care. The jury found the Petitioner guilty of rape, aggravated sexual battery, and sexual battery by an authority figure, and it acquitted him of a second count of rape. *State v. Kennth George Arnold*, No. E2020-00383-CCA-R3-CD, 2022 WL 390588, at *1-4 (Tenn. Crim. App. Feb. 9, 2022), *perm. app. denied* (Tenn. June 8, 2022).

The Petitioner filed a pro se petition for the writ of habeas corpus and requested that counsel be appointed. The lower court reviewed the petition and determined that its claims were in the nature of those contemplated by the Post-Conviction Procedures Act and treated the petition as one for post-conviction relief. The court appointed counsel, who filed an amended petition for post-conviction relief. After counsel was permitted to withdraw, new counsel was appointed and filed the second and third amended petitions. As relevant to this appeal, the amended petitions alleged that the Petitioner had been represented in the conviction proceedings by four attorneys: pretrial counsel, trial counsel, sentencing counsel, and appellate counsel. The Petitioner alleged that pretrial counsel, trial counsel, and appellate counsel provided ineffective assistance in various respects and that the cumulative effect of multiple deficiencies of counsels' performance deprived him of a fair trial.

At the post-conviction hearing, pretrial counsel testified that he represented the Petitioner after receiving a referral from an attorney who attended church with the Petitioner. Counsel said he began the representation in late April or early May, 2014. Counsel said the Petitioner did not have criminal charges at the time.

Pretrial counsel testified that the Petitioner wanted to give a statement to law enforcement because the Petitioner had already confessed to his wife, a church counselor, and a church men's group. Counsel said the Petitioner was being pressured by these individuals, including a police officer in the men's group, to make a statement to the police. Counsel said the Petitioner and the victim's mother were trying to "save their marriage" and that the Petitioner was receiving "some advice that [talking to the police was] the right thing to do" for the marriage.

Pretrial counsel testified that the Petitioner contacted him in late April or early May 2014, but did not retain him. Counsel said they spoke "a handful of times," followed by a gap of four to five months before the Petitioner contacted him again and paid a retainer. Counsel said, "[T]hat's when all of the information, the text messages in November, December, started occurring."

Pretrial counsel identified text messages he exchanged with the Petitioner. Counsel read a December 6, 2014 message he received from the Petitioner:

> [U]pon much discussion, I've decided that I cannot continue to wait for the system. Things continuing changing for us like our church not allowing my wife and I [sic] attending any functions to my wife's ex-husband filing for custody of her kids, which means he's now trying to get . . . [the victim's] twin brother. I cannot continue watching things fall apart around my family and must step up and do the right thing. I would like to have legal counsel when a confession is made and need your advice on how we can go about doing this.

Counsel said the Petitioner sent him text messages on December 9, 2014, in which the Petitioner relayed that Chattanooga Police Officer Kenneth Hogans had told the Petitioner that the Petitioner had received "some very bad advice" from counsel and that counsel was not going to be able to prevent the police from arresting the Petitioner. Counsel read December 10, 2014 text messages, in which the Petitioner said he thought he "should just go ahead and deal with this" by talking to the police. The Petitioner advised counsel that the Petitioner was going to talk to a Hamilton County detective "at 8:00" and requested that counsel be present if possible. The Petitioner stated, "I'm exhausted and just want this to be over with." Counsel read his response, in which he said, "I still don't advise you to do this, but if you have decided to anyway, call me first so we can talk, please."

Pretrial counsel testified that he spoke to the Petitioner several times about the Petitioner's desire to speak to the police. Counsel said he advised the Petitioner "to say nothing." Counsel said he told the Petitioner that once the Petitioner confessed, guilt or innocence would no longer be an issue. Counsel said he advised the Petitioner that the possible charges would be "serious" and would "carry prison terms." Counsel said that he told the Petitioner that Officer Hogans was "bluffing" about the existence of arrest warrants for the Petitioner and that the Petitioner should ignore the pressure he was receiving from Officer Hogans. Counsel said he also told the Petitioner that he could wait until after any warrants were served to decide to talk to the police. Counsel said that he told the Petitioner to "go down to the Sheriff's Department and present yourself to be turned in" if he wanted to determine if any arrest warrants existed. Counsel said that he had investigated whether any warrants existed, but he did not recall whether he checked an online database or called

the Sheriff's Department. Counsel acknowledged that he never contacted Officer Hogans to tell him that the Petitioner was represented and that Officer Hogans should stop contacting the Petitioner.

Video recordings of the Petitioner's January 20 and February 10, 2015 police interviews were received as exhibits. A portion of the Petitioner's January 20 police interview was played. In the recording, the Petitioner was read his *Miranda* rights in the presence of pretrial counsel. The Petitioner looked at counsel after the *Miranda* admonition, and pretrial counsel nodded his head. Counsel agreed that, in the recordings, he did not tell the Petitioner not to make a statement. Counsel said the Petitioner was not indicted for at least several weeks, and possibly as long as several months, after making the statement to police.

Pretrial counsel testified that he had many in-person and telephone conversations with the Petitioner about the Petitioner's desire to give a statement to police and that the exhibit containing text messages did not represent their entire discussions. Counsel said the Petitioner had become convinced that he needed to give an inculpatory statement by December 2014, and counsel continued to try to dissuade the Petitioner from this course of action. Counsel said that, once the Petitioner made the decision to talk to the police, "what it looked like the game plan was was [sic] cooperation, be honest, be truthful." Counsel said he "wanted to lay the foundation to paint [the Petitioner] out as the individual who did the right thing" in order to "maybe garner better settlement terms." Counsel said that the Petitioner was also concerned about avoiding an arrest at his workplace and that counsel had been able to secure assurances that this would not happen. Counsel said that, by the time of the Petitioner's January 20, 2015 interview, counsel believed that the Petitioner could not be persuaded, despite counsel's efforts, to refrain from making a police statement.

Pretrial counsel testified that, after the Petitioner's first police interview, Hamilton County Sheriff's Detective Lee contacted counsel because he wanted to do a follow-up interview. Counsel did not think he advised the Petitioner not to participate in a second interview. Counsel said he was present for both interviews.

Pretrial counsel testified that, "while we were waiting for the indictment to be issued," Detective Lee notified him that the victim's family did not want to be contacted by the Petitioner. Counsel learned at this point that the Petitioner had sent letters to the victim and her father. Counsel identified a letter written by the Petitioner to a person who other evidence showed was the victim's father. Counsel said the Petitioner told him that he wrote the letters on the recommendation of his counselor. When asked if he subpoenaed telephone records with text messages between the victim and the Petitioner, he did not "recall . . . even thinking about that as an issue." Counsel said that the Petitioner did not

tell counsel that the Petitioner intended to write to the victim and the victim's father and that counsel never anticipated that the Petitioner would do so.

Pretrial counsel testified that, at an unidentified time, the Petitioner wanted a Georgia law firm to be involved in the case, but counsel was unwilling in "having my strings pulled or [being] told what to do by another firm." Counsel said he filed a motion to withdraw. He said that the Petitioner ultimately retained trial counsel, instead of the Georgia firm, and that the trial court permitted pretrial counsel to withdraw and trial counsel to be substituted as counsel of record.

Trial counsel testified that, after the case had been pending for about one year, Petitioner contacted him about representation at the Petitioner's trial, which had been scheduled. Counsel did not recall the details of the Petitioner's hiring him. Counsel said that he entered an appearance and moved the trial court for a continuance of the trial, which the court granted.

Trial counsel testified that he "never had a client that was as difficult to talk with" as the Petitioner. Counsel said he had difficulty obtaining information from the Petitioner and getting the Petitioner to understand information that counsel imparted. Counsel said he engaged an expert, Dr. Robert Brown, because counsel believed the Petitioner "was acting under some disability and I wanted that to be checked out." Counsel said Dr. Brown's opinion about the Petitioner's sanity at the time of the offense "was not helpful" to the defense. Likewise, counsel said Dr. Brown's opinion about the existence of diminished capacity "was not helpful . . . either." Counsel thought the Petitioner knew that Dr. Brown's findings were not helpful to the defense. Counsel stated that, after Dr. Brown completed his evaluation of the Petitioner, Dr. Brown continued to meet with counsel and the Petitioner in order to assist counsel in communicating with the Petitioner more effectively.

Trial counsel identified Dr. Brown's report, and it was received as an exhibit. In it, Dr. Brown diagnosed the Petitioner with: Post-Traumatic Stress Disorder, Severe, with Dissociative Symptoms; Major Depressive Disorder, Recurrent, Moderate to Severe (without Psychosis); Generalized Anxiety Disorder, Moderate to Severe; and Neurocognitive Disorder due to Frontotemporal Problems, Moderate. Dr. Brown also opined that "insufficient data" existed to support an insanity defense. Dr. Brown further opined, "There is no question but that the [Petitioner], because of the degree of his neuropathology had diminished mental capacities at the time of the reported crime, as a matter of clinical perspective (not per legal definition)."

Trial counsel acknowledged a report from Johnson Mental Health Center, which was received as an exhibit. In the report, Senior Psychological Examiner Todd Wiggins

and June Young, Psy.D., stated that the Petitioner was competent to stand trial but that his competence might deteriorate over time without treatment. The report stated that the Petitioner had not been evaluated for diminished capacity because the examiners had not been directed to do so by court order but that "a basis [existed] for an inpatient forensic evaluation with the need of inpatient forensic-related treatment and assessment with hospitalization pursuant to T.C.A. § 33-7-301(a) at Moccasin Bend Mental Health Institute." Counsel testified that none of the reports generated after psychological testing and evaluation of the Petitioner were helpful to the defense.

Trial counsel testified that he urged the Petitioner to accept a plea offer because counsel did not think the trial could be "won." Counsel thought that the plea offer was for ten years at the time counsel began representation and that he was "pretty sure" he was able to negotiate the offer "down to 6 years with a possibility of 5 years." Counsel said he had made more effort with the Petitioner than with any of his other clients to convince the Petitioner to accept a plea offer because he "knew what was going to happen if we tried the case." Counsel said the Petitioner rejected the plea offers, despite counsel's having used phrases like "almost certainly convicted" and "decades in jail." Counsel said he continued to talk to the assistant district attorneys assigned to the case in hopes that they would extend an offer with a lower number of years that the Petitioner might accept. Counsel said none of the prosecutors were willing to consider a plea offer involving probation.

Trial counsel testified that he did not interview the State's "potential witnesses" because he did not expect the State to call the witnesses. Counsel said he expected the State's evidence to consist of the victim's testimony and the evidence of the Petitioner's two interviews and the Petitioner's apology letters. Counsel said he saw no way to deny the Petitioner's culpability without losing credibility with the jury. He said his defense strategy was to call Dr. Brown to testify about "some information that the jury could rely on that would be helpful to the defense." When asked why he decided to call Dr. Brown as a witness even though Dr. Brown's findings were not helpful to the defense, counsel said, "Clearly . . . that's all I had." Counsel said Dr. Brown testified that the Petitioner "had dead tissue in his brain." Counsel acknowledged that Dr. Brown had testified that the Petitioner knew he had sexually assaulted the victim and "that he did [it] intentionally and that it was wrongful." Counsel said he focused on evidence of the Petitioner's "mental deficiencies" because counsel "wanted sympathy [for the Petitioner if he] could get it."

Trial counsel testified that he no longer had his case file, having given it to the attorney who represented the Petitioner after the trial. Counsel did not recall having obtained screenshots of text messages between Officer Hogans and the Petitioner but said they might have been in his file.

- 6 -

Trial counsel testified that he would never have advised the Petitioner to testify at the trial and would have tried to dissuade the Petitioner from testifying if the Petitioner expressed a desire to do so. Counsel agreed that the Petitioner did not testify and that the State therefore was unable to impeach the Petitioner with his suppression hearing testimony.

Trial counsel testified that he did not request a mistrial when Dr. Brown testified about the Petitioner's "confession" to Dr. Brown during the mental evaluation. Counsel said he filed a motion to suppress the Petitioner's pretrial statements but decided not to pursue the motion after realizing he "might forego a postconviction" claim against pretrial counsel. When shown two documents, he acknowledged that they were motions to suppress he had filed and which alleged ineffective assistance of pretrial counsel. The motions were received as exhibits. The motions sought suppression of the Defendant's pretrial statements and the Defendant's letters to the victim and "members of the . . . victim's family." Counsel said that he watched the recordings of the Defendant's interviews several times and that he thought he ultimately struck the motions because he thought the defense would not prevail at a hearing.

When shown an exhibit of the January 2, 2019 motion to suppress hearing, trial counsel testified that he called the Petitioner as a witness after instructing him "not to go beyond [counsel's] specific questions." Counsel thought he obtained a ruling "that [the Petitioner] would only be testifying as to certain things" but said the transcript "will speak for itself" regarding whether the trial court ruled that counsel had "opened the door" to additional questioning of the Petitioner.

Trial counsel agreed that, in cross-examining the victim at the trial, he had been prohibited from questioning the victim about matters encompassed by Tennessee Rule of Evidence 412. He said that, in questioning the victim, "I wasn't aware of anything like that and I guess I was just trying to see if I could find something." Counsel did not recall if the State's objection to his questioning had been based upon his failure to file the required notice pursuant to Rule 412.

Trial counsel could not recall whether he had argued a motion for a bill of particulars.[1] The indictment was received as an exhibit. Counsel agreed that the indictment alleged criminal conduct occurring between January 1, 2009, and December 31, 2011. Counsel agreed that the State elected this same time period for Count 1, which required as an element of the offense that the victim be less than age thirteen. Counsel said, "[I]t was

---

[1] The trial record, which is filed with the clerk of this court in Case Number E2020-0383-R3-CD, reflects that trial counsel filed a motion for a bill of particulars on August 7, 2017, that the State provided an election of offenses, and that the trial court instructed the jury in accord with the election. *See* Tenn. R. Evid. 201(b)(c) (judicial notice).

really hard to nail down when the offenses occurred and to calculate [the victim's] age, but we did it based on the house they were living in and her age at the time they were living in that house." He said he talked to the Defendant but "didn't get a lot of . . . information from" him. Counsel said he also spoke to the Defendant's sister. Counsel thought he saw the deed to the house and said he "was satisfied that we knew when they moved." The warranty deed for the Petitioner's Harrison, Tennessee home was received as an exhibit and reflected that the Petitioner and the victim's mother conveyed the home to another party on August 19, 2011.

Trial counsel did not recall whether he cross-examined the victim at the trial about inconsistencies between her May 13 and December 3, 2014 pretrial statements and her trial testimony as to her age when the Defendant began sexually abusing her. Counsel said he did not recall whether the victim's pretrial statements and trial testimony were consistent about her age when the sexual abuse began. Counsel said he would have cross-examined the victim about any inconsistency "if [he] recognized it." The victim's pretrial statements, the trial transcript, the jury instructions, the verdict forms, and the judgment forms were received as exhibits. The indictment and election of offenses reflected the following:

| Charged Offense | Indictment Date | Election |
|---|---|---|
| Count 1<br>Aggravated Sexual Battery, victim under age 13 | 01/01/09 to 12/31/11 | 01/01/09 to 12/31/11<br>"where the Defendant touched the victim on her buttocks underneath the clothing. This occurred at the Defendant's home in [description of neighborhood] in Harrison, Tennessee." |
| Count 2<br>Sexual Battery by an Authority Figure | 10/01/11 to 11/30/12 | 10/1/11 to 11/30/12<br>"Defendant, the victim's step-father, made the victim masturbate him with her hand inside of the victim's bedroom. This occurred in the marital home of [the victim's mother] and the Defendant on [road] in Hixson, TN." |
| Count 3<br>Rape, digital penetration | 10/01/11 to 12/30/12 | 10/1/11 to 11/30/12<br>Defendant digitally penetrated the victim "during the same incident where the Defendant performed oral sex on the victim |

| | | as alleged in Count 4. This occurred in the marital home of [the victim's mother] and the Defendant on [road] in Hixson, TN." |
|---|---|---|
| Count 4<br>Rape, oral penetration | 10/01/11 to 11/30/12 | 10/01/11 to 11/30/12<br>"Defendant performed oral sex on the victim in the victim's bedroom during the same incident as [digital penetration] alleged in Count 3. This occurred in the marital home of [the victim's mother] and the Defendant on [road] in Hixson, TN." |

When asked if the victim testified that Count 1 occurred in the "Harrison house" before her mother married the Defendant, trial counsel said, "That sounds right." The jury instructions were received as an exhibit, and they reflected that the jury was instructed as follows: "With respect to Count 1, the state has elected to submit for your consideration the alleged
act of the defendant in touching the victim on her buttocks underneath clothing at the home in . . . Harrison, Tennessee, sometime between January 1, 2009, and December 31, 2011."

Trial counsel identified a letter from the Petitioner's pastor to a prosecutor in the District Attorney General's office regarding the Petitioner. The letter was received as an exhibit and reflected the pastor's account of the Petitioner's having disclosed sexual abuse of an unidentified minor to the pastor. The letter stated that the pastor had been advised that the Petitioner had later self-reported the matter to law enforcement, with the assistance of an attorney.

Trial counsel acknowledged that he had "used the insanity language, appreciate the wrongfulness of [one's] actions" multiple times during the trial and that the State objected. Counsel agreed that the court commented, "I never would have imagined that the defense would call an expert that couldn't support their defense."

The transcript of the suppression hearing was received as an exhibit and reflected the following relative to the testimony of the Petitioner: Trial counsel acknowledged the difficult position facing the defense in raising an ineffective assistance of pretrial counsel claim in a motion to suppress, rather than deferring the issue for a post-conviction petition, should the Petitioner be convicted. Trial counsel instructed the Petitioner that the hearing's

scope was limited and that the Petitioner should not "go off on long discussions." The Petitioner testified that he was counseled by his pastor, who advised him that he should confess because God would never forgive him if he did not. The Petitioner said he did not want to go to Hell. He said his pastor referred him to pretrial counsel, who was a friend of his pastor. The Petitioner said pretrial counsel never told him that he would likely be arrested and jailed for forty years if he confessed. The Petitioner later said he did not know if pretrial counsel said this but that nothing counsel said "stuck out to" him. The Petitioner stated that pretrial counsel said, "If [giving a statement to the police is] what you want, you feel like you need to do, I can go with you." The prosecutor asked the Petitioner if he disclosed during his counseling sessions with his pastor that the Petitioner had sexually abused the victim, and the defense objected. The trial court overruled the objection on the basis that any disclosure by Petitioner of sexual abuse of the victim was relevant to whether the Petitioner had been prejudiced by pretrial counsel's alleged deficient performance. The Petitioner acknowledged that he had asked his pastor for help with things that were troubling him, which included sexual abuse of the victim. Trial counsel again objected, and the court overruled the objection, noting that the court was not ruling, at this juncture, "as to whether this would be admissible at trial." The Petitioner thought he remembered his pastor's saying that the pastor "had to report [child sex crimes] to child services." The Petitioner said that, in addition, a member of his church men's group, whose name the Petitioner did not recall, sent him text messages stating that the police were searching for him and "were going to pick [him] up." The Petitioner professed not to know how this person "found out about the child" because the Petitioner had not said anything about it to the group. The Petitioner said he had given the inculpatory statements because he was doing what his pastor told him to do. He said he returned for the second interview at his pastor's instruction. Trial counsel objected when the prosecutor asked the Petitioner about specifics of what the Petitioner had said in his second interview, and the court overruled the objection, noting that the motion was based upon the allegation that pretrial counsel had provided ineffective assistance related to the Petitioner's giving pretrial statements to the police. The Petitioner said he wrote the letters to the victim and her family because a counselor suggested that he send apology letters to them. When asked if pretrial counsel encouraged him to write the letters, the Petitioner said, "I don't think he had any problem that I wrote them." The Petitioner thought he had mentioned the letters to pretrial counsel before the Petitioner sent them. The Petitioner said pretrial counsel had not told him that the letters could be a basis for indictment, could be used against him at a trial, and could cause him to go to prison. The Petitioner said he would not have given the statements if he had understood that he would be indicted. The Petitioner said he did not understand that he was "in trouble" relative to his decisions to make the statements and to write the letters and said he "[j]ust was doing what I was told."

The transcript of the suppression hearing also reflects that trial counsel called Dr. Brown, who testified about the Petitioner's cognitive issues and memory and their impact

- 10 -

on the Petitioner's ability to assist trial counsel in preparing for a trial. Dr. Brown also testified about the Petitioner's post-traumatic stress disorder due to the Petitioner's being abused beginning at age three. Dr. Brown stated that, in his evaluation over the course of multiple meetings with the Petitioner, the Petitioner had never exhibited an understanding of his *Miranda* rights. Dr. Brown opined that the Petitioner had not understood the advice he received from pretrial counsel relative to making a statement to the police. Dr. Brown described the Petitioner as "so intensely wanting to appease authority figures" and as having made the pretrial statements based upon a motivation "to seek a solution to his problem of guilt." Dr. Brown opined that the Petitioner would not be "able to assimilate" legal advice "and appreciate . . . and understand it." Dr. Brown said the Petitioner "doesn't want to appear dumb" and attempted to "hide the fact that he has mental defects." Dr. Brown acknowledged his determinations that the Petitioner was competent to stand trial and that an insanity defense could not be supported. In Dr. Brown's opinion, the Petitioner understood that the sexual abuse had been wrong in the context of his being unfaithful to his wife but that the Petitioner did not understand that his actions were wrong and harmful to the victim and were criminal acts. Dr. Brown said the Petitioner's feelings of guilt related to his having been unfaithful and that the Petitioner had "a pathological form of dependency" with the Petitioner's pastor, who told him to confess.

The transcript of the suppression hearing reflects that, after the Petitioner and Dr. Brown testified, trial counsel said that, based upon Dr. Brown's testimony about the Petitioner's inability to understand legal advice about whether to give a pretrial statement, the defense would withdraw its ineffective assistance allegation for purposes of the motion to suppress.

The trial transcript that was received as an exhibit reflected that trial counsel challenged the State's proof in a motion for judgment of acquittal. Specifically, as to Count 1, charging aggravated sexual battery, counsel argued that the State had not proven beyond a reasonable doubt that the offense occurred before the victim's thirteenth birthday. The trial court denied the motion, finding that the evidence, viewed in the light most favorable to the State, would support a finding of guilt of aggravated sexual battery. *See* Tenn. R. Crim. P. 29.

Appellate counsel testified that he had been appointed to "take over a motion for new trial that [sentencing counsel] had . . . agreed to take and then realized that he was going to be unable to continue on." In counsel's opinion, after a review of the transcript and records he received from sentencing counsel, he did not think the motion for a new trial that sentencing counsel had filed needed to be amended. Counsel said he evaluated the objections made by trial counsel but did not consider the "areas where the Court could have acted without being prompted." He said he argued the motion at a hearing and that he evaluated what he believed were the best issues for the appeal. He agreed that the Court

- 11 -

of Criminal Appeals affirmed the convictions and that the Tennessee Supreme Court denied the application for permission to appeal.

Attorney Wencke-Eileen West, an expert in Tennessee criminal defense trial practice, testified that she had not spoken with the Petitioner but that she had reviewed documents from his conviction proceedings, including the trial transcripts, the discovery, the opinion of the Court of Criminal Appeals in the conviction proceedings, and the post-conviction petitions. In addition, Ms. West had been present in the courtroom for the previous testimony at the post-conviction hearing.

Ms. West testified that, in her opinion, nothing "beneficial to" the Petitioner occurred in the Petitioner's police interviews. Ms. West noted that no plea offer or benefit was "on the table" at the time of the interviews. She noted, as well, that pretrial counsel had not "put on the record" at the interviews that he had advised the Petitioner against making the statements and that counsel had not objected to the manner in which the officers questioned the Petitioner.

Ms. West testified that an insanity defense would be a problematic strategy in the Petitioner's case due to the time span of the Petitioner's offenses. She opined that "a lot more extensive medical proof or psychological proof" would be necessary to sustain an insanity defense. Ms. West stated that she had reviewed the trial transcript and that trial counsel "was trying to argue the insanity defense . . . through the totality of the circumstances" in his opening statement. She said that, in her experience, this was improper and that she did not think "you could even get to an insanity defense through the totality of the circumstances." Ms. West thought Dr. Brown's expert testimony had been "more confusing for the jury than anything else." She noted that he testified about competence, insanity, and diminished capacity "kind of all in the same breath." She opined that a defense based upon the effects on the Petitioner of adverse childhood experiences (ACEs) from having been in foster care, having been the victim of childhood sexual abuse, and his anoxic brain injury from having been locked in a freezer would have been preferable to a diminished capacity defense. She thought an ACEs defense could have been successful on the rape charges.

Ms. West opined that an adequate motion pursuant to Tennessee Rule of Evidence 412 would have contained information about a relationship the victim reported she had at age fourteen or fifteen. Ms. West said that she would have hired an investigator to "check into" the person the victim identified. She acknowledged that this tactic would involve questioning the victim about her sexual experience and that it "could be reasonable" for an attorney not to pursue this tactic.

- 12 -

Ms. West testified that the motion for new trial should have, but did not, raise issues related to the Petitioner's competency, Tennessee Rule of Evidence 412, and the Petitioner's mental health.

After receiving the proof, the post-conviction court filed a written order denying post-conviction relief. This appeal followed.

## ANALYSIS

Post-conviction relief is available "when the conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103 (2025). A petitioner has the burden of proving his factual allegations by clear and convincing evidence. *Id.* § 40-30-110(f) (2025). A post-conviction court's findings of fact are binding on appeal, and this court must defer to them "unless the evidence in the record preponderates against those findings." *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997); *see Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). A post-conviction court's application of law to its factual findings is subject to a de novo standard of review without a presumption of correctness. *Fields*, 40 S.W.3d at 457-58.

To establish a post-conviction claim of the ineffective assistance of counsel in violation of the Sixth Amendment, a petitioner has the burden of proving that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see Lockhart v. Fretwell*, 506 U.S. 364, 368-72 (1993). The Tennessee Supreme Court has applied the *Strickland* standard to an accused's right to counsel under article I, section 9 of the Tennessee Constitution. *See State v. Melson*, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

A petitioner must satisfy both prongs of the *Strickland* test in order to prevail in an ineffective assistance of counsel claim. *Henley*, 960 S.W.2d at 580. "[F]ailure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). To establish the performance prong, a petitioner must show that "the advice given, or the services rendered . . . are [not] within the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975); *see Strickland*, 466 U.S. at 690. The post-conviction court must determine if these acts or omissions, viewed in light of all of the circumstances, fell "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. A petitioner "is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy by his counsel, and cannot criticize a sound, but unsuccessful, tactical decision." *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994); *see Pylant v. State*, 263 S.W.3d 854, 874 (Tenn. 2008). This deference,

however, only applies "if the choices are informed ones based upon adequate preparation." *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992). To establish the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

# I
## Pretrial Counsel

The Petitioner contends that the post-conviction court erred in denying relief on his ineffective assistance of counsel claim related to pretrial counsel. The Petitioner argues that pretrial counsel provided deficient performance in "walking his uncharged client down to the police station and allowed the police to draw a confession from [the Petitioner]" and that counsel's having done so was "glaringly prejudicial," without further explanation. The State responds that the court did not err in denying relief. We agree with the State.

In its order denying relief, the post-conviction court found that pretrial counsel repeatedly advised the Petitioner against making a statement to the police. The court found that counsel advised the Petitioner that (1) no reason existed, in the absence of an investigation or charge, to give a statement that might be used as evidence in a later proceeding, (2) any confession would limit the Petitioner's subsequent ability to contest his guilt, and (3) the potential charges were significant and carried the possibility of imprisonment. The court found that counsel "would have been helpful" in reinforcing the legal advice in writing, noting that the Petitioner's memory was poor and he had been suffering the consequences of his admissions to his wife and fellow churchgoers. The court found that counsel had been able to delay the Petitioner's initial statement to the police and found that the Petitioner's eventual pretrial statements were due "not to the insufficiency of counsel's advice but to the Petitioner's decision to ignore counsel's advice." The court found that the Petitioner chose to "prioritize spiritual concerns over all other concerns." Thus, the court concluded that any deficient performance had not been prejudicial and denied relief.

The record does not preponderate against the post-conviction court's determination. Pretrial counsel testified that he advised the Petitioner, over a course of months, not to make a statement to the police. Counsel warned the Petitioner, who had not yet been charged, that any confession would place the Petitioner in danger of prosecution and imprisonment. Counsel warned the Petitioner that a confession would foreclose the opportunity to contest guilt at a trial and would leave only the question of punishment. Although the defense expert testified at the hearing that she saw no reason "to walk someone into B felonies when they're not even charged with anything," the court found

- 14 -

that the Petitioner was driven by personal and spiritual concerns, to the detriment of his legal best interests, and insisted upon making a pretrial statement against the advice of counsel. When the Petitioner made his decision to make a statement, counsel urged him to wait until counsel could attend the interviews, which counsel did. Other evidence of the Petitioner's guilt existed, in addition to the police statements. The Petitioner confessed to his wife and people affiliated with the Petitioner's church, and he wrote inculpatory apology letters to the victim and her father. In resolving the ineffective assistance claim against pretrial counsel, the court noted that counsel had not underscored his advice by reducing it to writing but that any alleged deficiency had not been prejudicial. The court did not err in denying relief on the Petitioner's ineffective assistance claim for pretrial counsel.

The Petitioner is not entitled to relief on this basis.

## II

## Trial Counsel

The Petitioner contends that the post-conviction court erred in denying relief on his claim that trial counsel provided ineffective assistance. The Petitioner argues that he was entitled to relief on his claims related to counsel's reliance on a defense expert, failure to follow the procedure required by Tennessee Rule of Evidence 412(d) for presentation of certain evidence, and failure to ensure that the State made an adequate election of offenses for Count 1, charging aggravated sexual battery. The State responds that the Petitioner has not shown that the court erred in denying relief. We agree with the State.

## A. <u>Relying on Defense Expert at the Trial</u>

The Petitioner argues that the post-conviction court erred in denying relief on his ineffective assistance claim related to trial counsel's calling Dr. Brown as a defense expert. The appeal of the Petitioner's convictions reflects the following:

> Doctor Robert J. Brown, Jr., a forensic psychologist, testified that he spent "well over 20 hours" interviewing, observing, and testing the defendant to determine whether the defendant was competent to stand trial. Although Doctor Brown initially concluded that the defendant was not competent, Doctor Brown was able to restore the defendant's competency. Doctor Brown diagnosed the defendant with post-traumatic stress disorder, attention deficit hyperactivity disorder, and an anxiety disorder that originated from the "sexual abuse that he sustained from approximately age three until just before he became a full-fledged adolescent." Doctor Brown also concluded

that the defendant suffered an "anoxic traumatic brain injury from those episodes where he was placed in the freezer with insufficient oxygen" by his older stepbrother. Doctor Brown testified that the defendant's mental diseases and defects rose to the level of "diminished capacity" "[c]linically, without question" but only on "two of the four prongs" "legally." He determined that by the time the defendant confessed to sexually abusing the victim, he understood the wrongfulness of his conduct.

During cross-examination, Doctor Brown acknowledged that the defendant was competent to stand trial and that an insanity defense could not be supported. Doctor Brown conceded that "[f]rom the standpoint of clinical perspective, yes, there are diminished capacities, but in reference to legal definition, no." He admitted that the defendant "knows that he did it intentionally and that it was wrongful" but then claimed that he could not say that the defendant intentionally engaged in the various activities with the victim. He also claimed that he could not determine whether the defendant had acted knowingly "because I don't have a date. I don't have a timeline as to when this transpired." Eventually, Doctor Brown acknowledged that the defendant possessed the capacity to act intentionally or knowingly but lacked the capacity to intentionally or knowingly inflict harm on the victim.

*Kenneth George Arnold*, 2022 WL 390588, at \*4.

Trial counsel testified at the post-conviction hearing that, although Dr. Brown's findings did not support insanity or diminished capacity defense theories, Dr. Brown was "all [he] had," in view of the State's evidence of the Petitioner's many inculpatory admissions to the police, his wife, church members, the victim, and the victim's father. Counsel said that calling Dr. Brown furthered a defense focused on the Petitioner's "mental deficiencies" and that he had hoped this evidence would garner sympathy for the Petitioner.

The post-conviction court found that the defense theory was to "make the most of the evidence" that would support a conclusion that the Petitioner suffered from a mental disease or defect that affected his "capacity to form the requisite mental state and even sanity." The court found that, in order to pursue such a defense, trial counsel needed "an expert to diagnose mental disease or defect, specifically, anoxic brain injury resulting from physical abuse amounting to torture when the Petitioner was a child." The court found that, in light of the evidence presented, "there was more scope to argue reasonable doubt and there was a basis, if necessary, for rejecting criminal attempt, which requires intent." The court found that, although Dr. Brown referred to the Petitioner's "guilt," he characterized it as "emerging" as the Petitioner realized the spiritual wrongfulness of his actions, rather than his "criminal liability." The court noted "that Dr. Brown's testimony

was helpful to the defense in some respects," as demonstrated by the prosecutor's closing argument attacking Dr. Brown's credibility. The court did not make a finding on the question of deficient performance but found "that any deficiency in counsel's performance . . . was not prejudicial."

At the point at which trial counsel undertook representation of the Petitioner, the Petitioner had confessed to the police, against the advice of his pretrial counsel, and to others that he sexually assaulted the victim. Trial counsel did not have a good-faith basis for contesting guilt in the face of the Petitioner's confessions. Counsel realized the possibility that the Petitioner had mental health issues and cognitive impairment, and counsel obtained evaluations of the Petitioner to determine if defenses based upon either could be supported. Although Dr. Brown did not find that insanity or diminished capacity defenses could be supported, he had relevant information about the Petitioner's background, which included childhood abuse, brain injury, and the Petitioner's psychiatric diagnoses. In addition, Dr. Brown worked extensively with the Petitioner and counsel to facilitate communication and help prepare the Petitioner for the trial. Counsel chose a trial strategy which involved calling Dr. Brown as a defense expert to testify about the Petitioner's childhood abuse and psychiatric diagnoses, while avoiding the Petitioner's testifying on his own behalf as to these matters. Counsel thought this strategy might garner the jury's sympathy for the Petitioner. Given the Petitioner's pretrial admissions of guilt, counsel's options were limited, and the proof of the Petitioner's guilt was strong. Although the post-conviction court declined to make a finding as to whether counsel's performance was deficient, it found that the Petitioner had failed to prove prejudice as to any deficient performance and denied relief. The evidence does not preponderate against the court's determination. The court did not err in denying relief.

The Petitioner is not entitled to relief on this basis.

## B. Failure to Follow Tennessee Rule of Evidence 412 Procedure

The Petitioner contends that the post-conviction court erred in denying relief on his claim that trial counsel provided ineffective assistance by failing to follow the procedure dictated by Tennessee Rule of Evidence 412(d) for admission of evidence under the so-called "Rape Shield Law." The State responds that the Petitioner has failed to demonstrate error, and we agree.

At the post-conviction hearing, trial counsel testified that he had no knowledge of any evidence which might form the basis for a Rule 412 motion. The Petitioner did not present any such evidence at the post-conviction hearing, other than Ms. West's speculation about a reference in a report to a romantic relationship the victim had at age fourteen or fifteen.

- 17 -

In denying relief on this claim, the post-conviction court made the following findings:

> To the extent that the Petitioner's acts were in dispute, he was acquitted [of one count of rape]. To the extent that the Petitioner's acts were not in dispute and other elements of the offenses were in dispute, specifically, the date of his contact with the victim's buttocks, his role as authority figure, and his mental state or capacity to form the requisite culpable mental state, evidence [which could have been admissible pursuant to Rule 412] could not have prevented him from being convicted. The Court therefore finds that any deficiency in counsel's performance in this respect was not prejudicial.

The Petitioner failed to offer proof at the post-conviction hearing of any admissible evidence for which trial counsel failed to seek admission. This court will not speculate about the nature of any witness testimony that was not presented at the evidentiary hearing. *See Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). Without this evidence, the post-conviction court was, likewise, unable to assess the merits of any alleged deficient performance in failing to seek admission of any such evidence and the prejudice to the Petitioner from any evidence purportedly absent from the trial. The court concluded that the Petitioner failed to prove his claim, and the record does not preponderate against this determination.

The Petitioner is not entitled to relief on this basis.

## C. Failure to Ensure an Adequate Election

The Petitioner contends that the post-conviction court erred in denying relief on his claim that he received the ineffective assistance of counsel because trial counsel failed to object to the State's election of the offense for the count charging aggravated sexual battery. He argues that the offense required that the victim's age be less than thirteen and that the time span covered by the charge included dates on which the victim was age fourteen. Thus, he argues that counsel's deficient performance deprived him of juror unanimity. The State counters that the court did not err in denying relief. We agree with the State.

When evidence is presented of multiple offenses that would fit the allegations of the charge, the State must elect the particular offense for which a conviction is sought, and the trial court must instruct the jury as to the need for jury unanimity regarding the finding of the particular offense elected. *See, e.g.*, *State v. Brown*, 762 S.W.2d 135, 137 (Tenn. 1988); *State v. Walton*, 958 S.W.2d 724, 727 (Tenn. 1997). "The purpose of election is to ensure

that each juror is considering the same occurrence. If the prosecution cannot identify an event for which to ask [for] a conviction, then the court cannot be assured of a unanimous decision." *State v. Shelton*, 851 S.W.2d 134, 138 (Tenn. 1993).

The record reflects that the State made the following election relative to the count charging aggravated sexual battery: occurring between January 1, 2009 and December 31, 2011 "where the Defendant touched the victim on her buttocks underneath the clothing. This occurred at the Defendant's home in [description of neighborhood] in Harrison, Tennessee." The victim's date of birth was August 7, 1998. *See Kenneth George Arnold*, E2022 WL 390588, at *1. Thus, her thirteenth birthday occurred on August 7, 2011, which was during the time period alleged in the indictment and the election of the offense.

Trial counsel testified at the post-conviction hearing that he had difficulty determining when the offenses were alleged to have occurred in relation to the victim's age and that the Petitioner had not been a helpful source of information. Counsel said he spoke to Petitioner's sister and viewed the deed to a home in order to ascertain when the victim's family had lived there. Counsel explained that the dates of the offenses were "based on the house they were living in and her age at the time they were living in that house." According to this court's opinion in the appeal of the convictions, the victim testified that the Petitioner touched her bottom under her clothing before her thirteenth birthday when she was visiting his home for the weekend and "[e]ight months to a year before" the Petitioner married her mother in July 2011 and eventually moving to a blended family home in Hixson. *Id*. at *1-2. The deed for the Harrison home, which was a hearing exhibit, reflected that the home was conveyed from the Petitioner and the victim's mother to a third party on August 19, 2011.

In denying relief on this issue, the post-conviction court made the following findings:

> There was no evidence at trial and there is no evidence now that dates the contact elected in the first count to any time on or after [the victim's thirteenth birthday]. As for the failure of the election of offense for the first count [charging aggravated sexual battery] to limit the period set forth in the charge to a period when the victim was less than thirteen, the instruction on election of offenses is clear that its purpose is to limit the jury's consideration of evidence to the elected evidence, not to negate an essential element of the offense or otherwise change the law applicable to the elected evidence. The Court therefore finds that any deficiency in counsel's performance in this respect was not prejudicial.

The record reflects that, although the indictment charged conduct occurring in a time period that included dates on and after the victim's thirteenth birthday, the election of offenses further specified that the offense occurred in the Harrison home, which the Petitioner and the victim's mother conveyed to a third party on August 19, 2011. The victim testified at the trial that the sole charged instance of aggravated sexual battery occurred before her thirteenth birthday, in the Harrison house, and before her mother and the Petitioner married in July 2011, which was before the victim's thirteenth birthday on August 7, 2011.

Trial counsel testified that he did not recall whether he argued a motion for a bill of particulars, but the trial record reflects that he filed one. In any event, the State provided an election of offenses, and the trial record reflects that the jury was instructed in accord with the election. Counsel testified about his efforts to identify when the aggravated sexual battery incident was alleged to have occurred based upon the victim's statements, his talking to the Petitioner and his sister, and his reviewing the deed to the house in which the incident was alleged to have occurred in order to determine when the Petitioner owned the house in relation to the victim's thirteenth birthday. The trial record reflects that the State presented evidence of a single incident of aggravated sexual battery, which occurred eight months to a year before the victim's mother and the Petitioner married in July 2011, which was a month before the victim's thirteenth birthday and a month before the family moved from the Harrison house, where the incident occurred. The indictment alleged a time period which corresponded with this evidence. That the indictment alleged additional time after the victim's thirteenth birthday, in this limited context, was insignificant. Although the post-conviction court did not address whether counsel provided deficient performance in not objecting to the bill of particulars on this basis, it found that the Petitioner was not prejudiced. The record does not preponderate against its determination. The State presented evidence of a single incident occurring before the victim's thirteenth birthday and was otherwise consistent with the allegations of the indictment and the bill of particulars. The evidence does not preponderate against the court's determination that the Petitioner failed to prove that he was prejudiced by a non-unanimous verdict.

The Petitioner is not entitled to relief on this basis.

## III

## Appellate Counsel

The Petitioner contends that the post-conviction court erred in denying relief on his claim that he received the ineffective assistance of appellate counsel. He argues that appellate counsel failed to amend the motion for new trial filed by trial counsel to include allegations of trial court error in (1) failing to *sua sponte* order a mistrial after trial counsel

"professe[d the Petitioner's] guilt in his opening statement," (2) excluding evidence pursuant to Tennessee Rule of Evidence 412, and (3) allowing the election to exceed the time period during which the victim's age was less than thirteen. The State responds that the court did not err in denying relief, and we agree.

The same legal standard that applies to ineffective assistance of appellate counsel claims applies to claims regarding the performance of trial counsel. *Carpenter v. State*, 126 S.W.3d 879, 886 (Tenn. 2004). Regarding the selection of issues to be raised on appeal, the determination "is generally within appellate counsel's sound discretion." *Id*. at 887. This court "should not second-guess such decisions, and every effort must be made to eliminate the distorting effects of hindsight." *Id*. Deference to tactical choices, however, does not apply if such choices are not "within the range of competence required of attorneys in criminal cases." *Id*.

When a petitioner claims appellate counsel was ineffective for failing to raise an issue on appeal, this court must consider the underlying appellate issue on its merits. *Id*.

> [F]or the reviewing court to determine the merits . . . , a petitioner should present the previously omitted issue in the same form and with the same legal argument(s), that is, applying law to the facts of the case, which petitioner asserts appellate counsel should have done. It is not enough to simply state that appellate counsel should have raised certain issues on appeal and to argue that these issues could have resulted in relief being granted to the petitioner.

*Russell Lenox Hamblin v. State*, No. M2012-01649-CCA-R3-PC, 2013 WL 5371230, at *8 (Tenn. Crim. App. Sept. 26, 2013), *perm. app. denied* (Tenn. Feb. 24, 2014). Our supreme court has also provided guidance, stating that reviewing courts should consider, in relevant part, whether the omitted issue is "significant and obvious," whether contrary legal authority exists, whether the omitted issue is stronger than the issues raised on appeal, whether an objection was lodged in connection with the omitted issues, whether the trial court's determination is subject to deference, whether appellate counsel testified about appeal strategy, whether appellate counsel and the petitioner reviewed potential appellate issues, whether appellate counsel reviewed all of the trial facts, whether the omitted issue involves assignment of error, and appellate counsel's level of experience. *Carpenter*, 126 S.W.3d at 882, 888 (citing *Mapes v. Coyle*, 171 F.3d 408, 427-28 (6th Cir. 1999)).

Appellate counsel was questioned at the post-conviction hearing about why he did not raise these specific issues in the motion for new trial and on appeal but testified generally that he thought the previously filed motion for new trial was sufficient and that

he had pursued the issues which he thought had the best possibility of success on appeal. The post-conviction court made the following relevant findings:

> The Petitioner alleges that appellate counsel was ineffective in not amending the motion for new trial to challenge . . . the Court's failure to order a mistrial *sua sponte* after trial counsel's concession in opening statement, the Court's exclusion of Rule 412 evidence, . . . [and] the Court's allowance of an election of offense for the first count that included time after the victim's thirteenth birthday when a victim under the age of thirteen was an essential element of the offense . . . . For the same reasons that the Court finds . . . that trial counsel was not ineffective in these respects, the Court finds that appellate counsel was not ineffective in these respects.

As the post-conviction court noted, the Petitioner failed to prove his claims as to trial counsel's alleged ineffectiveness on these issues. In his brief, the Petitioner has neglected to explain the arguments that appellate counsel should have presented on these issues in the motion for new trial and on appeal of the convictions. *See Russell Lenox Hamblin*, No. M2012-01649-CCA-R3-PC, at *8. The record does not preponderate against the court's findings.

The Petitioner is not entitled to relief on this basis.

## IV

## Cumulative Effect of Deficiencies of Performance

The Petitioner contends that the post-conviction court erred in denying relief on his claim that he was prejudiced by the cumulative effect of multiple instances of deficient performance of counsel. He argues that the court failed "to meaningfully address" the issue. The State responds that court did not err in denying relief on this basis, and we agree.

In a post-conviction case, "when an attorney has made a series of errors that prevents the proper presentation of a defense, it is appropriate to consider the cumulative impact of the errors in assessing prejudice" of an ineffective assistance of counsel allegation. *Timothy Terell McKinney v. State*, No. W2006-02132-CCA-R3-PD, 2010 WL 796939, at *37 (Tenn. Crim. App. Mar. 9, 2010), *perm. app. denied* (Tenn. Aug. 25, 2010); *see State v. Taylor*, 968 S.W.2d 900 (Tenn. Crim. App. 1997). More than one instance of deficient performance, when considered collectively, can result in a sufficient showing of prejudice pursuant to *Strickland*. *Timothy Terell McKinney*, 2010 WL 796939, at *37; *see Taylor*, 968 S.W.2d at 909. The question is whether counsel's deficiencies "cumulatively

prejudiced . . . the right to a fair proceeding and undermined confidence in the outcome of the trial." *Timothy Terell McKinney*, 2010 WL 796939, at *37.

In denying relief on this claim, the post-conviction court found that the Petitioner failed to establish prejudice resulting from the cumulative effect of multiple deficiencies of performance. We acknowledge that, as to several issues, the court did not make specific findings as to the question of deficient performance and found only that the Petitioner had failed to show prejudice. Although the failure of a petitioner to prove one of the two prongs for establishing an ineffective assistance of counsel claim is fatal to the claim, findings of fact as to both prongs by a post-conviction court facilitate appropriate disposition of cumulative deficiencies of performance claims, as well as appellate review of ineffective assistance claims. *See* T.C.A. § 40-30-111(b); *Henley*, 960 S.W.2d at 580; *Goad*, 938 S.W.2d at 370.

In any event, the Petitioner argues generally that his attorneys "committed multiple errors" but fails to explain how, in the face of the overwhelming evidence against him, a reasonable probability of a different result existed. We note that the jury acquitted him of one count of rape, despite his counsels' alleged deficiencies. The post-conviction court was unpersuaded, and the evidence does not preponderate against its determination in this regard.

The Petitioner is not entitled to relief on this basis.

In consideration of the foregoing and the record as a whole, the judgment of the post-conviction court is affirmed.

**s/ Robert H. Montgomery, Jr.**
ROBERT H. MONTGOMERY, JR., JUDGE

- 23 -